**STATE v. SPENCER**

[218 N.C. App. 267 (2012)]

STATE OF NORTH CAROLINA v. LESELLE CORNELIUS SPENCER, III, DEFENDANT

No. COA11-873

(Filed 17 January 2012)

**1. Assault—driving a vehicle at an officer—vehicle used as deadly weapon—no instruction on lesser-included offense**

The trial court did not err in a prosecution for assault with a deadly weapon on a police officer by not instructing on the lesser-included offense of misdemeanor assault on a government official where defendant drove his automobile toward an officer at a high rate of speed and the officer had to take affirmative action to avoid harm. The vehicle was used as a deadly weapon as a matter of law.

**2. Constitutional Law—effective assistance of counsel—remanded for evidentiary hearing**

Defendant's claim of ineffective assistance of counsel was dismissed without prejudice to his right to file a motion for appropriate relief, so that an evidentiary hearing could be held on whether he had consented to counsel's admissions in the closing arguments.

Appeal by defendant from judgments entered on or about 13 January 2011 by Judge Marvin K. Blount in Superior Court, Pasquotank County. Heard in the Court of Appeals 30 November 2011.

*Attorney General Roy A. Cooper, III by Assistant Attorney General Thomas H. Moore, for the State.*

*Kimberly P. Hoppin, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted of eluding arrest with a motor vehicle, assault with a deadly weapon on a government official, and resisting a public officer. Defendant contends that the trial court erred in failing to instruct the jury on a lesser included offense and that he received ineffective assistance of counsel. For the following reasons, we find no error as to the trial court's failure to instruct the jury on a lesser-included offense, and we dismiss defendant's claim for ineffective assistance of counsel for him to file a motion for appropriate relief with the trial court so that an evidentiary hearing may be conducted.

STATE v. SPENCER

[218 N.C. App. 267 (2012)]

## I. Background

The State's evidence tended to show that around 1:24 a.m. on 15 December 2009, Officer Lamer Battle of the Elizabeth City Police Department was on general duty patrol when he received a call from a fellow officer stating "there was a vehicle trying to evade him[.]" As Officer Battle sat in a turn lane, he "observed a vehicle basically just run through the stop sign of Camelia Drive at a high rate of speed[;] the vehicle never stopped, never slowed down." Officer Battle "turned on [his] blue lights and [his] siren in order to stop the vehicle for a traffic stop." Officer Battle followed the vehicle "in excess of 90 miles an hour, very close to a hundred, maybe 110, trying to catch up to the vehicle." The vehicle eventually "spun out" and came "to rest on the sidewalk area of Dollar General." Officer Battle testified,

> At that point I exited out of my vehicle. I had my gun drawn, making my way from the rear of my vehicle to the front of . . . [defendant]'s vehicle in order to command him to get out of the car or go to the driver's side door and take him out of the car. At that point I'm making my way from the trunk of my vehicle to the front of his vehicle and I can see dirt starting to spin up from where he was trying to regain traction and make his way back onto the roadway. As I'm standing in front of his vehicle, I could see the headlights raise up and come down. At that point I realized . . . [defendant] had regained traction and he started heading directly towards me to run me over.

Standing approximately 10 to 12 feet from the moving vehicle, Officer Battle "jumped back" as "the vehicle was coming towards [him] at a very fast pace." Eventually defendant was apprehended and tried by a jury.

A jury found defendant guilty of felonious fleeing to elude arrest with a motor vehicle ("eluding arrest"); assault with a deadly weapon on a law enforcement officer ("AWDW"); and resisting, delaying, and obstructing a public officer ("resisting a public officer"). The trial court determined defendant had a prior record level of V and sentenced him to 25 to 30 months imprisonment for the eluding and AWDW convictions and to 60 days imprisonment for the resisting a public officer conviction. Defendant appeals.

## II. Lesser Included Offense

[1] Defendant first contends "the trial court committed reversible and plain error by failing to instruct the jury or submit a verdict sheet

on misdemeanor assault on a government official, a lesser-included offense of assault with a deadly weapon on a government official." (Original in all caps.) Both defendant and the State direct this Court's attention to cases which they argue are dispositive of this case. Defendant contends that this case is controlled by *State v. Clark*, 201 N.C. App. 319, 689 S.E.2d 553 (2009) while the State contends it is controlled by *State v. Batchelor*, 167 N.C. App. 797, 606 S.E.2d 422 (2005). Turning first to our standard of review:

> Plain error occurs when the error is so fundamental that it undermines the fairness of the trial, or where it had a probable impact on the guilty verdict.

> It is well-established that

> the trial court must submit and instruct the jury on a lesser included offense when, and only when, there is evidence from which the jury could find that the defendant committed the lesser included offense. However, when the State's evidence is positive as to every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged, the trial court is not required to submit and instruct the jury on any lesser included offense. The determining factor is the presence of evidence to support a conviction of the lesser included offense.

> Failure to so instruct the jury constitutes reversible error not cured by a verdict of guilty of the offense charged.

*State v. Boozer*, ____ N.C. App. ____, ____, 707 S.E.2d 756, 762 (2011) (citations, quotation marks, and brackets omitted).

> In *Batchelor*,

> on 29 August 2002, Gates County Sheriff Ed Webb, along with Deputies Wiggins, Noble and Bunch, and Hertford County Deputy Liverman of the Roanoke/Chowan Narcotics Task Force, went to defendant's home around 6:30 p.m. to execute a search warrant. Defendant was not home at the time, and the search warrant was served on defendant's wife. While the officers were in the yard of the home, defendant drove into the yard. His wife identified him to the officers. Deputy Liverman approached the vehicle with his hands in the air, yelling for defendant to stop. Instead, however, defendant drove around the U-shaped driveway, increased his speed, and headed back towards the road.

Deputy Wiggins was standing in or near the driveway as defendant drove away. Defendant made no attempt to avoid hitting Deputy Wiggins, and as he passed, the side mirror of defendant's vehicle struck the deputy, knocking him off his balance, though he did not fall. Sheriff Webb observed: Deputy Wiggins was right directly in his path. He had to jump behind his patrol car[.] I saw him stumble.

When defendant left the driveway, four of the officers got in three vehicles to pursue him, leaving Deputy Liverman behind to complete the search. They reached speeds in excess of 100 miles per hour while trying to keep defendant in sight. Sheriff Webb, accompanied by Deputy Noble, was driving the vehicle in front. As they rounded a curve, Sheriff Webb realized that defendant had turned around and was driving back towards the three patrol vehicles in their lane of travel. Sheriff Webb was forced to brake and pull off the road onto the shoulder. Deputy Wiggins, driving the vehicle directly behind Sheriff Webb, was forced to pull into the opposite lane to avoid a head-on collision. Deputy Bunch, driving the third vehicle slightly farther behind, stopped his car and pulled it sideways across one lane of travel hoping to stop the defendant. The other lane of travel was still open. Defendant collided with Deputy Bunch's vehicle and came to a stop on the side of the road in a ditch.

*Batchelor*, 167 N.C. App. at 798-99, 606 S.E.2d at 423 (quotation marks, ellipses, and brackets omitted). Defendant was convicted of four counts of assault with a deadly weapon on a government official and appealed arguing that the trial court should have instructed the jury on the lesser-included offense of misdemeanor assault on a government official. *Id.* at 798-99, 606 S.E.2d at 423-24.

This Court concluded that the trial court did not err in failing to instruct the jury on the lesser-included offense of misdemeanor assault holding that "an automobile driven at a high speed is a deadly weapon as a matter of law" and reasoning that

[t]he key element in determining whether or not a weapon is deadly per se is the manner of its use:

The deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the

weapon itself. Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly is one of law, and the Court must take the responsibility of so declaring. But where it may or may not be likely to produce fatal results, according to the manner of its use its alleged deadly character is one of fact to be determined by the jury.

A car sitting idle may not be deadly, but the manner of its use by defendant clearly put the officers in danger of death or great bodily harm. The evidence showed that defendant drove his car directly towards Deputy Wiggins who was standing in the driveway, and defendant drove at a high rate of speed directly at the officers' vehicles in their lane of travel. Two cars had to take evasive action to avoid a head-on collision with defendant, and defendant crashed into the third car with the officer in it. The evidence, therefore, leads to but one conclusion, which is the deadly nature of defendant's use of the car, and we find no error in the trial court's failure to submit the lesser charge of assault on a government official to the jury.

*Id.* at 800, 606 S.E.2d at 424 (citation, quotation marks, and ellipses omitted).

In *Clark*,

Patrol Sergeant Victor Haynes was on duty with the Shelby Police Department on 26 July 2003. At approximately 5:30 p.m., he saw a dog fall off the back of a truck, landing in the middle of a busy street. Sergeant Haynes pulled his car over with his blue lights flashing and took the dog back to his patrol car.

While standing at his car with the rear door open trying to get the dog into the back of his vehicle, Sergeant Haynes heard an engine racing. Soon after, defendant struck Sergeant Haynes with her pick-up truck. The truck pushed Sergeant Haynes against the back of the patrol car, and the mirror or another object on the side of defendant's truck hit his elbow and back side. Sergeant Haynes slapped the back of the vehicle, trying to get defendant's attention. Sergeant Haynes experienced pain in his elbow.

Defendant continued to drive up the street and eventually backed into a driveway further down the road, still within

Sergeant Haynes' view. Sergeant Haynes returned the dog to its owner and then proceeded up Monroe Street to where the truck was parked. When he approached defendant, she was angry and refused to give him her driver's license. When other officers arrived at the scene, defendant was yelling about a prior incident in which she had reported that her car was stolen, but Sergeant Haynes had determined that the car had actually been repossessed. When asked why she struck Sergeant Haynes with her truck, she responded by asking why he was not lying in the road or going to the hospital if he had been hit.

*Clark*, 201 N.C. App. at 320-21, 689 S.E.2d at 555-56. Here again, the defendant was convicted of assault with a deadly weapon on a government official and appealed, arguing that the jury should have been instructed on misdemeanor assault on a government official. *Id.* at 323, 689 S.E.2d at 557.

In *Clark*, this Court considered the reasoning in *Batchelor*, but ultimately distinguished the case from *Batchelor* based upon the facts:

In this case, we cannot conclude that the evidence leads to only one conclusion. Sergeant Haynes testified:

Like I said, as I was trying to get the dog around the door into the car, I heard an engine racing. At that point, I looked and I saw a car—saw the tires of a vehicle moving right up against me. As I went to stand up, the vehicle struck me and pushed me against the back of the patrol car and the mirror or the object on the side of the car actually hit me on my elbow and the back side and pushed me up against my vehicle. And as I came off the car, I slapped the back of the vehicle, trying to get the driver's attention.

As a result of this incident, Sergeant Haynes did not sustain any injuries requiring immediate medical attention. He did experience pain in his elbow where he was struck by the truck's mirror or another object on the truck. There was no evidence of any damage to the patrol car.

Thus, although the truck was not sitting idle, there was no evidence that it was moving at a high rate of speed. Sergeant Haynes never testified regarding how fast the truck was going. The State argues, however, that the sound of the engine racing would indicate the car was traveling at a high rate of speed

when it hit Sergeant Haynes. A jury would not, however, necessarily draw that inference, since the sound could simply indicate that defendant was revving the motor. Indeed, the fact that Sergeant Haynes could slap the back of the truck as it went by would permit a jury to infer that the truck actually was not traveling very fast.

The State also points to Sergeant Haynes' testimony that he was pushed by the truck into the patrol car and was injured. The jury, however, could take into account the lack of serious injury to Sergeant Haynes resulting from his contact with defendant's vehicle. Based on that testimony, the officer was not hurt when pushed into the patrol car, allowing the finding that the truck did not impact him very hard. Instead, he only had pain in his elbow from being struck by the mirror or other object extending from the truck as it passed by. Given the lack of significant injury to Sergeant Haynes, the lack of any evidence of damage to the patrol car, and the fact that an object extending from the truck struck the officer's elbow, a jury could conclude that the truck was not aimed directly at the officer and the impact was more of a glancing contact.

The State's argument that the manner in which defendant drove the truck necessarily placed Sergeant Haynes in great danger of death or serious injury would require us to draw inferences from the evidence in favor of the State. In order, however, to decide whether the deadly weapon issue should have been presented to the jury or decided as a matter of law, the evidence must be viewed in the light most favorable to defendant—and not to the State.

Accordingly, we hold that given the evidence presented at trial, although a jury could find that the truck was used as a deadly weapon, it could also find that the truck was not likely to produce death or great bodily harm, under the circumstances of its use. The trial court, therefore, erred in failing to submit to the jury the lesser included offense of assault on a government official.

*Id.* at 325-27, 689 S.E.2d at 558-59 (citation, quotation marks, and brackets omitted). This Court went on to conclude that the trial court's error did amount to plain error. *See id.* at 327, 689 S.E.2d at 559.

We now turn to the essential question posed by both *Batchelor* and *Clark*: "whether the car involved in th[e] case [should be] considered a deadly weapon as a matter of law" remaining mindful

> that the key element in determining whether or not a weapon is deadly per se is the manner of its use. Thus, the deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself. An instrument is a deadly weapon as a matter of law only where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion. On the other hand, where the weapon may or may not be likely to produce fatal results, according to the manner of its use, its alleged deadly character is one of fact to be determined by the jury.

*Id.* at 325, 689 S.E.2d at 558 (quoting *Batchelor*, 167 N.C. App. at 799-800, 606 S.E.2d at 424) (citations, quotation marks, ellipses, and brackets omitted).

We conclude that this case is on point with *Batchelor* as both cases involved vehicles moving "at a high rate of speed" and required affirmative action by the officers involved in order to avoid harm. *Batchelor*, 167 N.C. App. at 800, 606 S.E.2d at 424. Here, Officer Battle testified that "the vehicle was coming towards me at a very fast pace[;]" "as the vehicle was coming towards me, I step[ped] out of the way[;]" "the vehicle started to head towards me and at that point I jumped back, jumped maybe eight or nine feet[;]" and "I knew . . . [defend-ant] had gained traction and he was accelerating back on the road. Due to my closeness of myself and his vehicle, at that point I felt like my life was in danger." Officer Caleb Hudson who witnessed the incident also testified that he "saw the vehicle move forward in the direction of where Officer Battle was standing[.]"

The facts here are similar to *Batchelor* wherein the "defendant drove his car directly towards Deputy Wiggins who was standing in the driveway" such that Deputy Wiggins "had to jump behind his patrol car" to avoid the defendant's vehicle, and the "defendant drove at a high rate of speed directly at the officers' vehicles in their lane of travel. Two cars had to take evasive action to avoid a head-on collision with defendant, and defendant crashed into the third car with the officer in it." *Id.* at 798-800, 606 S.E.2d at 423-24. Furthermore, these facts are distinguishable from *Clark*, wherein though Sergeant Haynes was actually hit by the vehicle he "did not sustain any injuries

requiring immediate medical attention" and "slapped the back of the vehicle" which could show "that the truck was not aimed directly at the officer and the impact was more of a glancing contact" and "that the truck actually was not traveling very fast." *Clark*, 201 N.C. App. at 326-27, 689 S.E.2d at 559. We thus conclude that as used here, the vehicle was a deadly weapon as a matter of law, and therefore the trial court did not err in failing to instruct the jury on a lesser-included offense. *See id.* at 325, 689 S.E.2d at 558.

### III.  Ineffective Assistance of Counsel

[2]  Defendant also argues that he "was deprived the effective assistance of counsel where trial counsel made certain admissions during his opening and closing statements without obtaining . . . [defendant]'s consent." (Original in all caps.) Defendant directs this Court's attention to various statements made by his attorney which he argues concede guilt to resisting a public officer and eluding arrest. We need not consider all of these statements, as defendant's counsel's statements during closing argument that defendant "chose to get behind the wheel after drinking, and he chose to run from the police[,]" and "Officer Battle was already out of the way and he just kept on going, kept running from the police" were concessions of guilt to resisting a public officer and eluding arrest. *See State v. Johnson*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (*Dec. 20, 2011*) (No. COA11-677); *see also* N.C. Gen. Stat. § 20-141.5 (2009) ("It shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties.").

As we recently noted in *Johnson,*

> Our Supreme Court has stated that ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent. *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 90 L.Ed. 2d 672 (1986); *see State v. Maready*, ___ N.C. App. ___, ___, 695 S.E.2d 771, 775-79 (concluding that the *Harbison* standard controls in non-capital cases), *disc. review denied and appeal dismissed*, 364 N.C. 329, 701 S.E.2d 246-47 (2010). In order for defendant to be convicted of resisting a public officer the State must have shown that (1) defendant willfully and unlawfully resisted, delayed or obstructed a public officer in

(2) discharging or attempting to discharge a duty of his office. N.C. Gen. Stat. § 14-223 (2005).

*Id.* at \_\_\_, \_\_\_, S.E.2d at \_\_\_ (quotation marks and brackets omitted). We further agree with *Johnson* that defendant's attorney's "statements cannot be construed in any other light than admitting the defendant's guilt" to both resisting a public officer and eluding arrest. *Id.; see* N.C. Gen. Stat. § 20-141.5.

> However, from the record before us, it is unclear whether defendant consented to the admission of guilt of this offense, which is minor in comparison to his other charges, by his attorney. As such, we dismiss this issue without prejudice in order for defendant to file a motion for appropriate relief so that a full evidentiary hearing may be held on this issue. *See Maready*, \_\_\_ N.C. App. at \_\_\_, 695 S.E.2d at 779-80 (noting this Court had previously remanded the case for an evidentiary hearing regarding the defendant's consent).

*Id.*

## IV.  Conclusion

For the foregoing reasons, we conclude that the trial court did not err in failing to instruct the jury on a lesser-included offense, and we dismiss defendant's ineffective assistance of counsel claim without prejudice to defendant's right to file a motion for appropriate relief, so that an evidentiary hearing may be held on the issue of whether defendant consented to his counsel's admissions in the closing argument.

NO ERROR in part; DISMISSED in part.

Judges BRYANT and CALABRIA concur.