IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-726

 Filed: 7 May 2019

Forsyth County, No. 15 CRS 51537

STATE OF NORTH CAROLINA

 v.

ANTON THURMAN MCALLISTER

 Appeal by defendant from judgment entered 22 August 2016 by Judge Richard

S. Gottlieb in Forsyth County Superior Court. Heard in the Court of Appeals

13 February 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Adren
 L. Harris, for the State.

 Joseph P. Lattimore for defendant-appellant.

 TYSON, Judge.

 Anton Thurman McAllister (“Defendant”) appeals by petition for writ of

certiorari from a judgment entered after a jury’s conviction of one count of habitual

misdemeanor assault. We find no error.

 I. Background

 Defendant met the victim, Stephanie Leonard, at a drug treatment facility

group session in Winston-Salem. Soon after they met, Defendant moved into Ms.

Leonard’s apartment.
 STATE V. MCALLISTER

 Opinion of the Court

 On the evening of 16 February 2015, Defendant and Ms. Leonard jointly

consumed a large bottle of wine at a table inside Ms. Leonard’s apartment. Around

9:00 p.m., they decided to walk to a nearby BP gas station to purchase cigarettes.

Before arriving at the BP gas station, Ms. Leonard decided she wanted more wine

and the pair began walking towards another store.

 At this point, Defendant realized Ms. Leonard had not disclosed to him that

she had money. Ms. Leonard testified that Defendant hit her in the face and knocked

her to the ground, causing her to lose her wallet in the fall. Ms. Leonard got up and

began to walk back towards the BP station. Defendant continued to strike her in the

face. A cashier at the BP heard the struggle and saw Defendant “jerk” Ms. Leonard

around outside of the store. The cashier called the police. Winston-Salem police

responded to the call, but did not find Defendant or Ms. Leonard. An officer recovered

Ms. Leonard’s wallet and identification card at the scene.

 The couple eventually returned to Ms. Leonard’s apartment. Ms. Leonard

testified that her face was bleeding and Defendant continued to hit her and drag her

around the apartment. During the struggle, as Ms. Leonard struck at Defendant, her

fingers entered his mouth and his fingers entered hers. Ms. Leonard testified that

she bit Defendant’s fingers and he bit her fingers back. At some point during the

altercation, Ms. Leonard got into the bathtub. Defendant washed blood off of her

body and splashed the blood-water mixture onto the walls.

 -2-
 STATE V. MCALLISTER

 Opinion of the Court

 Ms. Leonard went into her bedroom. Defendant attempted to force Ms.

Leonard to perform fellatio. Defendant and Ms. Leonard then engaged in sexual

intercourse and both fell asleep.

 The next day, 17 February, Winston-Salem police arrived at the BP station to

meet Ms. Leonard and investigate the assault. Officer P.M. Felske testified he

observed Ms. Leonard’s “cut lip and swollen lip and that it appeared that she had

been assaulted.” Law enforcement officers also entered and examined Ms. Leonard’s

apartment. Officer Christopher Ingram observed and photographed Ms. Leonard’s

injuries and the blood stains the officers had observed in the apartment, on the floor

of the bathroom and walls of the bathtub.

 Officer J.A. Henry collected a security video recorded at the BP station on 16

February and observed Defendant present in the area of that same BP on the evening

of 17 February. Defendant agreed to go to the police department to speak with

officers about an unrelated incident. At the police station, Defendant agreed to

discuss the incident between himself and Ms. Leonard. Defendant purportedly

admitted he had pushed Ms. Leonard and engaged in other physical contact.

 Defendant was indicted for habitual misdemeanor assault and charges of

second-degree rape, second-degree sex offense, and assault by strangulation.

 On 22 August 2016, the jury returned verdicts finding Defendant guilty of

assault on a female, the underlying felony for habitual misdemeanor assault, and not

 -3-
 STATE V. MCALLISTER

 Opinion of the Court

guilty of all the other offenses. Defendant admitted to the predicate misdemeanor

assault convictions for habitual misdemeanor assault. The trial court entered

judgment sentencing Defendant to a term of 15 to 27 months imprisonment for

habitual misdemeanor assault.

 Defendant failed to file a notice of appeal. On 19 July 2017, Defendant filed a

pro se “Motion to Modify and Terminate Sentence for Ineffective Assistance of

Counsel.” The trial court treated Defendant’s motion as a motion for appropriate

relief (“MAR”) and denied the motion without an evidentiary hearing.

 Defendant filed a petition for writ of certiorari with this Court on

11 August 2017. By order entered 29 August 2017, this Court allowed the petition

“for the purpose of reviewing the judgment entered . . . on 22 August 2016.”

 On 17 October 2018, Defendant filed an appellate brief, and at the same time

filed a second petition for writ of certiorari seeking review of the trial court’s

27 July 2017 order denying the MAR. The second petition was referred to this panel

for consideration.

 II. Jurisdiction

 This Court reviews Defendant’s criminal conviction by writ of certiorari

granted on 29 August 2017 pursuant to N.C. Gen. Stat. § 15A-1422(c)(3) (2017).

 III. Issue

 -4-
 STATE V. MCALLISTER

 Opinion of the Court

 Defendant asserts his counsel conceded his guilt to the offense of habitual

misdemeanor assault on a female which constitutes a per se denial of his

constitutional right to effective assistance of counsel.

 IV. Standard of Review

 “On appeal, this Court reviews whether a defendant was denied effective

assistance of counsel de novo.” State v. Wilson, 236 N.C. App. 472, 475, 762 S.E.2d

894, 896 (2014).

 V. State v. Harbison

 In State v. Harbison, 315 N.C. 175, 180, 337 S.E.2d 504, 507 (1985), our

Supreme Court held that where “counsel admits his client’s guilt without first

obtaining the client’s consent, the client’s rights to a fair trial and to put the State to

the burden of proof are completely swept away.” The Court stated the practical effect

is the same as if defense “counsel had entered a plea of guilty without the client’s

consent.” Id.

 Our Supreme Court in Harbison requires a defendant’s consent to be on the

record to allow his counsel’s concession of defendant’s guilt of one or more of the

offenses for which he is charged. An “ineffective assistance of counsel, per se in

violation of the Sixth Amendment, [is] established in every criminal case in which the

defendant’s counsel admits the defendant’s guilt to the jury without the defendant’s

consent.” Id. at 180, 337 S.E.2d at 507-08.

 -5-
 STATE V. MCALLISTER

 Opinion of the Court

 Defendant argues his trial counsel admitted or conceded his guilt on the

misdemeanor charge of assault on a female without his consent and asserts he is

entitled to a new trial. The State argues that no Harbison violation occurred because

counsel did not expressly concede Defendant’s guilt to a charged crime or only

admitted one element of a charged offense.

 The facts and statements of the present case fall squarely within the rationale

of the precedents cited by the State from the Supreme Court of North Carolina and

our Court, where Defendant’s counsel may have admitted an element of the offense,

but he did not expressly concede the crime charged or all other elements of the

charged crime.

 A. State v. Gainey

 In State v. Gainey, 355 N.C. 73, 93, 558 S.E.2d 463, 476 (2002), our Supreme

Court rejected the defendant’s assignment of error asserting his counsel’s argument

violated Harbison. The Court recognized that “defense counsel never conceded that

defendant was guilty of any crime.” Id. Counsel merely noted defendant’s

involvement in the events surrounding the death of the victim, and argued that “if

he’s guilty of anything, he’s guilty of accessory after the fact. He’s guilty of possession

of a stolen vehicle.” Id. (defendant was charged with murder, kidnapping, and

robbery). The Court noted the defendant had “taken defense counsel’s statements

out of context to form the basis of his claim, and . . . fail[ed] to note the consistent

 -6-
 STATE V. MCALLISTER

 Opinion of the Court

theory of the defense that defendant was not guilty.” Id. The defendant’s Harbison

objections were overruled. Id.

 B. State v. Fisher

 In State v. Fisher, 318 N.C. 512, 350 S.E.2d 334 (1986), the defendant was

charged with and tried for first-degree murder. His counsel argued:

 His Honor is going to submit to you a verdict form—Madam
 Clerk, do we have it drawn up yet? Thank you. In which its
 going to say, Ladies and Gentlemen of the Jury, Do you find
 the defendant guilty of murder in the first degree and then
 down below that it’s going to say Do you find him guilty of
 second degree. Second degree is the unlawful killing of a
 human being with no premeditation and no deliberation
 but with malice, illwill. You heard Johnny testify, there
 was malice there and then another possible verdict is going
 to say Do you find him guilty of voluntary manslaughter.
 Voluntary manslaughter is the killing of a human being
 without malice and without premeditation. It’s a killing.
 And it also has not guilty, remember that too. I asked you
 about that and it’s not a not guilty as in some trial I wasn’t
 there, I don’t know a darn thing about it, I wasn’t there,
 never been to Silversteen, never will go there. There are
 some that say, some defenses that say not guilty, that I was
 there. It’s stupid to be there, it don’t make mama proud of
 being there but I was there.

Id. at 533, 350 S.E.2d at 346.

 Our Supreme Court held defendant-Fisher was not entitled to a new trial as

the counsel’s comments did not admit his guilt and counsel’s statement did not fall

within the line of cases showing a Harbison violation. Id. Even though Fisher’s

 -7-
 STATE V. MCALLISTER

 Opinion of the Court

counsel admitted malice, an element of the offense, the Court held that his counsel

did not admit his client was guilty to murder as charged. Id.

 Our Court has also recognized, “[a]dmission by defense counsel of an element

of a crime charged, while still maintaining the defendant’s innocence, does not

necessarily amount to a Harbison error.” See, e.g., State v. Wilson, 236 N.C. App. 472,

477, 762 S.E.2d 894, 897 (2014) (“Because this purported admission by Defendant’s

counsel did not refer to either the crime charged or to a lesser-included offense,

counsel’s statements in this case fall outside of Harbison. At best, an admission by

Defendant’s trial counsel that Defendant pointed a gun at [victim] while still

maintaining Defendant’s innocence of attempted first-degree murder, would appear

to place counsel’s statements within the rule in [State v.] Fisher, and thus still outside

of Harbison.”).

 C. State v. Randle

 In State v. Randle, 167 N.C. App. 547, 550, 605 S.E.2d 692, 693 (2004), this

Court reviewed a defendant’s assertion his counsel had implicitly conceded his guilt

to a lesser-included offense during closing argument without first obtaining his

consent. Defendant’s counsel told the jury

 they must be entirely convinced of each and every element
 of the crimes. As serious injury is the essential difference
 between first and second degree rape, defense counsel then
 attempted to cast doubt on the seriousness of the mental
 and physical injuries to [the victim] by arguing [the victim]
 did not suffer serious injury.

 -8-
 STATE V. MCALLISTER

 Opinion of the Court

Id. at 549, 605 S.E.2d at 693.

 Defendant’s counsel also summarized evidence that the defendant had

ejaculated on himself. Id. In his final sentence to the jury, defense counsel argued,

“Teddy Randle is not guilty of first degree rape. Teddy Randle is not guilty of first

degree sexual offense.” Id. Our Court distinguished the Randle case from the

requirements of Harbison because “counsel in the case at bar never actually admitted

the guilt of defendant to any charge, nor did counsel claim that defendant should be

found guilty of some offense.” Id. at 552, 605 S.E.2d at 695.

 D. State v. Maniego

 The State also cites State v. Maniego, 163 N.C. App. 676, 683, 594 S.E.2d 242,

246, appeal dismissed, review denied, 358 N.C. 737, 602 S.E.2d 369 (2004), in which

the defendant argued his counsel’s opening statement violated Harbison. The

defendant’s counsel stated:

 Maniego put himself in the vehicle with Clifford Miller and
 David Brandt. He put himself driving the vehicle, he put
 himself at the scene where David Brandt was murdered by
 Clifford Miller. Through his statements, you’ll hear his
 testimony in this case and he did make three different
 statements. The first two are incomplete. The third one is
 the final version. It’s the truth about his involvement in
 these crimes, and it will show to you that he did not aid and
 abet in the killing of David Brandt by Clifford Miller, nor
 did he act in concert with Clifford Miller to kill David
 Brandt. The fact that he’s at the scene where these acts
 occurred is not enough for you to find him guilty of these
 crimes.

 -9-
 STATE V. MCALLISTER

 Opinion of the Court

Id. at 684, 594 S.E.2d at 247. This Court held no Harbison violation had occurred to

award a new trial because “[a]dmitting a fact is not equivalent to admitting guilt.”

Id. (citation omitted).

 E. Defendant’s Cases

 A review of cases cited by Defendant, wherein this Court awarded new trials

based upon counsels’ admissions of their client’s guilt in closing arguments, also

reflects the fallacy of Defendant’s argument. Defendant’s assertion that his counsel’s

statements in closing argument denied his constitutional right to effective counsel

under Harbison is clearly not supported by these cases.

 In State v. Maready, 205 N.C. App. 1, 4-5, 695 S.E.2d 771, 774-75 (2010), the

defendant pled not guilty and was tried before a jury. During his closing argument,

defense counsel “conceded that the State had met its burden with respect to the

charges of DWI, reckless driving, DWLR and misdemeanor ‘larceny and/or possession

of stolen property.’” Id. at 4, 695 S.E.2d at 774. Counsel also made the following

statements:

 We do have the two misdemeanor assaults. . . . We don’t
 contest those. They are inclusive in the events that have
 significant issues associated with them, but we don’t
 contest those. And you can go and make your decisions
 accordingly. . . . [Defendant] holds absolute—holds
 responsibility for [the death of the victim]. I just argue it’s
 not murder. It’s Involuntary Manslaughter.

 - 10 -
 STATE V. MCALLISTER

 Opinion of the Court

Id. at 4, 695 S.E.2d at 774-75. This Court found:

 Defendant’s counsel discussed the elements of involuntary
 manslaughter with the jury, stating that the second
 element was “that . . . [D]efendant’s impaired driving
 proximately caused the victim’s death. That’s true.
 [Defendant’s] guilty of that and should be found guilty of
 that.” Defendant’s counsel also stated that: “[Defendant’s]
 already admitted to you guilt . . . to . . . Assault with a
 Deadly Weapon times two[.]”

 At the close of all the evidence and after closing arguments,
 but before jury instruction, Defendant’s counsel again
 admitted Defendant’s guilt to the charges of reckless
 driving, DWI, DWLR and misdemeanor possession of
 stolen goods.

Id. at 4-5, 695 S.E.2d at 775. The facts before us are clearly distinguishable from

counsel’s admissions and statements in Maready. See id.

 Defendant also cites State v. Spencer, 218 N.C. App. 267, 275, 720 S.E.2d 901,

906 (2012), wherein the defendant was charged with resisting a public officer and

eluding arrest. See N.C. Gen. Stat. § 20-141.5(a) (2017) (“It shall be unlawful for any

person to operate a motor vehicle on a street, highway, or public vehicular area while

fleeing or attempting to elude a law enforcement officer who is in the lawful

performance of his duties.”).

 The defendant’s counsel’s closing argument in Spencer admitted the defendant

“chose to get behind the wheel after drinking, and he chose to run from the police”

and “Officer Battle was already out of the way and he just kept on going, kept running

from the police.” Spencer, 218 N.C. App. at 275, 720 S.E.2d at 906. This Court held

 - 11 -
 STATE V. MCALLISTER

 Opinion of the Court

counsel had conceded defendant’s guilt to resisting a public officer and to eluding

arrest. This Court remanded the case for a determination of whether the defendant

had received the proper Harbison warnings. Id.

 VI. Crimes Charged

 Defendant’s other charges of second-degree rape, second-degree sexual offense,

and assault by strangulation were submitted to the jury, in addition to the habitual

misdemeanor assault charge. The habitual misdemeanor assault premised upon an

assault on a female, was the only count the jury convicted defendant of committing.

The State’s evidence tended to show Defendant had assaulted and struck Ms.

Leonard by pushing her down, biting her, and hitting her in the face, causing injuries

of scrapes and bruises to her back and fingers, and bleeding and swelling of her lips.

 The trial court instructed the jury that in order for them to find Defendant

guilty, the State must prove three things beyond a reasonable doubt: (1) Defendant

intentionally assaulted the alleged victim by hitting her; (2) the alleged victim was a

female; and, (3) Defendant was a male over the age of 18. The elements of habitual

misdemeanor assault are: (1) a simple assault or a simple assault and battery or

affray; (2) which causes physical injury; and, (3) two or more prior convictions for

either misdemeanor or felony assault. N.C. Gen. Stat. § 14-33.2 (2017).

 Counsel’s closing argument asserted two people had gotten drunk and argued,

which escalated into a fight. Counsel stated, “You heard him admit that things got

 - 12 -
 STATE V. MCALLISTER

 Opinion of the Court

physical. You heard him admit that he did wrong. God knows he did.” Counsel’s

statements relayed and summarized the evidence before the jury, which included

both the officer’s testimony and Defendant’s recorded hour-and-a-half long video

interview with officers, shown to the jury. In the video interview, Defendant made

the statements that were summarized in counsel’s closing argument. Counsel

repeated his assertion that Defendant and Ms. Leonard were “[t]wo drunk people

[who] got into an argument.”

 While defense counsel acknowledged the jurors may “dislike Mr. McAllister for

injuring Ms. Leonard,” he did not state Defendant “assaulted,” struck, pushed, bit, or

committed any of the specific acts or elements as alleged by the State. Further,

counsel did not acknowledge Defendant’s age or prior criminal record, both elements

of habitual misdemeanor assault.

 Our controlling precedents above hold that where counsel admits an element

of the offense, but does not admit defendant’s guilt of the offense, counsel’s statements

do not violate Harbison to show a violation of the defendant’s Sixth Amendment

rights. Counsel’s statements before us are not consistent with the facts of either

Maready or Spencer, in which per se violations are presumed by counsel’s admission

of a client’s guilt to crimes or all the elements thereof without the client’s consent.

Fisher, 318 N.C. at 533, 350 S.E.2d at 346; Wilson, 236 N.C. App. at 476, 762 S.E.2d

at 897.

 - 13 -
 STATE V. MCALLISTER

 Opinion of the Court

 Here, counsel’s conduct was not per se deficient under Harbison to award a new

trial.

 VII. Strickland v. Washington

 Since counsel’s statements do not fall within Harbison as per se ineffective

assistance, Defendant’s claim of ineffective assistance of counsel must be analyzed

using the Strickland factors. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed.

2d 674, 693 (1984). A defendant’s claim of ineffective assistance of counsel has two

components:

 First, the defendant must show that counsel’s performance
 was deficient. This requires showing that counsel made
 errors so serious that counsel was not functioning as the
 “counsel” guaranteed the defendant by the Sixth
 Amendment. Second, the defendant must show that the
 deficient performance prejudiced the defense. Unless a
 defendant makes both showings, it cannot be said that the
 conviction or death sentence resulted from a breakdown in
 the adversary process that renders the result unreliable.

Id.

 However, here, Defendant presents no argument tending to show he was

prejudiced by counsel’s asserted deficient performance to such an extent the outcome

of the trial would have been different, but for the alleged errors. Defendant has not

demonstrated or argued any prejudice. Defendant is not entitled to a new trial on

this issue. Id.

 VIII. Motion for Appropriate Relief

 - 14 -
 STATE V. MCALLISTER

 Opinion of the Court

 Defendant petitioned this Court on 18 October 2018 to issue another writ of

certiorari to review on the merits the trial court’s denial of his “Motion to Modify and

Terminate Sentence for Ineffective Assistance of Counsel,” which the trial court

treated as a motion for appropriate relief (“MAR”). The trial court found Defendant’s

motion presented only matters of law and raised no factual issues to require an

evidentiary hearing. The court summarily denied defendant’s MAR on 27 July 2017.

 Defendant had filed his earlier 11 August 2017 petition for writ of certiorari to

this Court. On 29 August 2017, this Court allowed Defendant’s petition for the

limited purpose of reviewing the 22 August 2016 habitual misdemeanor assault

judgment entered immediately after defendant’s trial.

 In his MAR, Defendant asserted, inter alia, his trial counsel had a conflict of

interest because his law firm had represented the victim in a similar criminal matter.

He asserted claims of ineffective assistance of counsel by his failure to object to

alleged false statements of the police, failure to share discovery materials with

defendant, and “many constitutional violations.”

 Defendant failed to provide any supporting affidavits or other evidence beyond

the bare assertions in his motion. The General Statutes require a MAR to be

supported by affidavit or other documentary evidence. N.C. Gen. Stat. § 15A-1420(b)

(2017). “A defendant who seeks relief by motion for appropriate relief must show the

 - 15 -
 STATE V. MCALLISTER

 Opinion of the Court

existence of the asserted ground for relief. Relief must be denied unless prejudice

appears.” N.C. Gen. Stat. § 15A-1420(c)(6) (2017).

 Defendant’s failure to provide affidavits or other evidence provided no basis for

the trial court to review and be able to determine whether an evidentiary hearing

would be required. See State v. Payne, 312 N.C. 647, 669, 325 S.E.2d 205, 219 (1985)

(Because defendant submitted no supporting affidavits or other documentary

evidence with his motion for appropriate relief and the alleged fact was not

ascertainable from the record or transcripts submitted, the Court “cannot address the

merits of defendant’s request for appropriate relief”); State v. Aiken, 73 N.C. App. 487,

501, 326 S.E.2d 919, 927 (1985) (“Since defendant did not comply with G.S. 15A–

1420(c)(6), the trial court’s summary denial of the motion for appropriate relief was

not error.”).

 Without any factual support, the trial court’s summary denial of Defendant’s

MAR was proper. Defendant’s subsequent and pending petition for writ of certiorari

filed 17 October 2018 is denied.

 IX. Conclusion

 This case is controlled by the precedents and holdings in Gainey, Fisher,

Randle, and Maniego. Defendant received a fair trial, free from prejudicial errors he

preserved and argued. Defendant admitted to his prior assault convictions to support

the charge for habitual misdemeanor assault.

 - 16 -
 STATE V. MCALLISTER

 Opinion of the Court

 There is no error in the jury’s verdict or in the judgment entered thereon.

Defendant’s pending petition for writ of certiorari filed 17 October is denied. It is so

ordered.

 NO ERROR.

 Judge STROUD concurs.

 Judge ARROWOOD dissenting with separate opinion.

 - 17 -
 No. COA18-726 – State v. McAllister

 ARROWOOD, Judge, dissenting.

 I respectfully dissent. I would hold that, under State v. Harbison, 315 N.C.

175, 337 S.E.2d 504 (1985), cert. denied, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), there

was a per se violation of defendant’s right to effective assistance of counsel.

 On appeal, defendant first argues that he was denied his constitutional right

to effective assistance of counsel when his counsel conceded he was guilty of assault

on a female during closing arguments. Defendant relies on our Supreme Court’s

decision in Harbison, and contends his counsel’s concession amounts to a per se

violation of the Sixth Amendment, thereby requiring a new trial.

 In Harbison, the Court noted that it recently adopted in State v. Braswell, 312

N.C. 553, 324 S.E.2d 241 (1985), the two-part test for resolving claims of ineffective

assistance of counsel enunciated by the United States Supreme Court in Strickland

v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). Harbison, 315 N.C. at 178, 337

S.E.2d at 506. That two-part test requires:

 First, the defendant must show that counsel’s performance
 was deficient. This requires showing that counsel made
 errors so serious that counsel was not functioning as the
 “counsel” guaranteed the defendant by the Sixth
 Amendment. Second, the defendant must show that the
 deficient performance prejudiced the defense. This
 requires showing that counsel’s errors were so serious as to
 deprive the defendant of a fair trial, a trial whose result is
 reliable.
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

Braswell, 312 N.C. at 562, 324 S.E.2d at 248 (quoting Strickland, 466 U.S. at 687, 80

L. Ed. 2d at 693) (emphasis omitted). Our Supreme Court has more recently

explained the test and the required showings as follows:

 To prevail on a claim of ineffective assistance of counsel, a
 defendant must first show that his counsel’s performance
 was deficient and then that counsel’s deficient performance
 prejudiced his defense. Deficient performance may be
 established by showing that counsel’s representation fell
 below an objective standard of reasonableness. Generally,
 to establish prejudice, a defendant must show that there is
 a reasonable probability that, but for counsel’s
 unprofessional errors, the result of the proceeding would
 have been different. A reasonable probability is a
 probability sufficient to undermine confidence in the
 outcome.

State v. Allen, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks

omitted), cert. denied, 549 U.S. 867, 166 L. Ed. 2d 116 (2006).

 In Harbison, however, the Court recognized that, “[a]lthough [it] still adheres

to the application of the Strickland test in claims of ineffective assistance of counsel,

there exist ‘circumstances that are so likely to prejudice the accused that the cost of

litigating their effect in a particular case is unjustified.’ ” 315 N.C. at 179, 337 S.E.2d

at 507 (quoting United States v. Cronic, 466 U.S. 648, 658, 80 L. Ed. 2d 657, 667

(1984)). For example, “when counsel to the surprise of his client admits his client’s

guilt, the harm is so likely and so apparent that the issue of prejudice need not be

addressed.” Id. at 180, 337 S.E.2d at 507. The Court reasoned,

 [w]hen counsel admits his client’s guilt without first
 obtaining the client’s consent, the client’s rights to a fair

 2
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

 trial and to put the State to the burden of proof are
 completely swept away. The practical effect is the same as
 if counsel had entered a plea of guilty without the client’s
 consent. Counsel in such situations denies the client’s
 right to have the issue of guilt or innocence decided by a
 jury.

Id. Consequently, the Court held that “ineffective assistance of counsel, per se in

violation of the Sixth Amendment, has been established in every criminal case in

which the defendant’s counsel admits the defendant’s guilt to the jury without the

defendant’s consent.” Id. at 180, 337 S.E.2d at 507-508.

 In the present case, the State brought the potential for a Harbison issue to the

trial court’s attention prior to opening statements. The State explained that

defendant did make some admissions in a statement to law enforcement and

cautioned that the court may need to make a Harbison inquiry if defense counsel is

going to address the admissions in the opening statements. The trial court then

questioned the defense as follows:

 THE COURT: Does the defense have any Harbison issues?

 [DEFENSE]: Not immediately, Your Honor. That’s not
 something I was expecting yet.

 THE COURT: Are you expecting to make any comments
 in your opening with regard to admissions?

 [DEFENSE]: Well, Judge, we have a lot to say about how
 and why he was interrogated which may brush up against
 --

 THE COURT: Well, can you get more specific than that.
 Because I want to make sure your client understands that

 3
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

 the State has the burden to prove each and every element
 of each claim and if you’re going to step into an admission
 during opening then I need to make sure that he
 understands that and he’s authorized you to do that.

 [DEFENSE]: Not in opening, I can stipulate to that.

The exchange ended with the court stating, “[l]et’s rereview that when we get back

from lunch.” The court, however, did not come back to the issue. In fact, there is no

further mention of the potential Harbison issue in the record.

 The evidence presented by the State at trial included a video of defendant’s

interview with police. In that interview, defendant admitted to a physical altercation

with the alleged victim that resulted in the alleged victim sustaining injuries.

 It appears from the record that defense counsel knew the interview was

damaging to defendant’s case and addressed it during the closing arguments.

Defense counsel suggested to the jury that the interview was coercive, noting that it

was “9:00 at night, surrounded by cops, pulled off the street to make a voluntary

statement[,]” and they begin talking to defendant about a moped that is unrelated to

these charges. Defense counsel then, however, made the following statements:

 You heard [defendant] admit that things got physical. You
 heard him admit that he did wrong, God knows he did.
 They got in some sort of scuffle or a tussle or whatever they
 want to call it, she got hurt, he felt bad, and he expressed
 that to detectives. Now they run with his one admission
 and say “well, then everything [the alleged victim] --
 everything else [the alleged victim] said must be true.”

 Because [defendant] was being honest, they weren’t honest
 with him.

 4
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

Following these statements, defense counsel returned to highlighting the coercive

nature of the interview, stating, “[t]wo detectives for three hours into midnight. The

whole time he’s thinking he’s going home.”

 Later in the closing argument, defense counsel stated that “[the alleged victim]

was injured by [defendant]” and addressed the severity of the charges by stating,

“[t]his is as serious as it gets, second-degree rape, second-degree sexual assault,

assault by strangulation.” Defense counsel did not mention the assault on a female

charge serving as the underlying offense for habitual misdemeanor assault. Finally,

in concluding the arguments to the jury, defense counsel stated,

 Jury, what I’m asking you to do is you may dislike
 [defendant] for injuring [the alleged victim], that may
 bother you to your core but he, without a lawyer and in
 front of two detectives, admitted what he did and only what
 he did. He didn’t rape this girl. . . .

 . . . All I ask is that you put away any feelings you have
 about the violence that occurred, look at the evidence and
 think hard. Can you convict this man of rape and sexual
 offense, assault by strangulation based on what they
 showed you? You can’t. Please find him not guilty.

 Defendant now contends these statements by defense counsel during closing

arguments amounted to a concession of guilt to the charge of assault on a female

without his consent, in violation of Harbison. In response to defendant’s Harbison

argument, the State briefly contends that this case does not fall under the prohibition

in Harbison because “there was never any specific concession of guilt” because

 5
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

“[c]ounsel never stated to the jury that defendant was guilty of assault on a female in

contrast to the counsel in Harbison.” The State cites various cases in which our courts

have determined there were no Harbison violations, such as cases in which counsel

admitted an offense that was not charged, see State v. Gainey, 355 N.C. 73, 558 S.E.2d

463, cert. denied, 537 U.S. 896, 154 L. Ed. 2d. 165 (2002); State v. Wilson, 236 N.C.

App. 472, 762 S.E.2d 894 (2014), or cases in which counsel did not concede all

elements of the offense charged, see State v. Hinson, 341 N.C. 66, 459 S.E.2d 261

(1995); State v. Fisher, 318 N.C. 512, 350 S.E.2d 334 (1986); State v. Maniego, 163

N.C. App. 676, 594 S.E.2d 242 (2004). The State further contends that defense

counsel in this case “asked the jury to find defendant not guilty of the charged

offenses” at the close of his argument.

 Upon review of these cases, I would hold defense counsel’s statement to the

jury in closing arguments amounted to a concession of defendant’s guilt to assault on

a female. Defense counsel did not simply recite evidence, he choose to highlight

specific evidence that defendant physically injured the alleged victim and argued to

the jury that defendant honestly admitted to police what he did. It appears defense

counsel used this strategy in order to cast doubt on the allegations of more serious

offenses that defendant did not admit to police. Defense counsel further indicated

defendant was wrong for his actions, defendant felt bad about his actions, and

explicitly stated “he did wrong, God knows he did.” I agree with defendant that

 6
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

defense counsel’s statements amount to an admission to assault on a female,

distinguishing this case from those cases cited by the State. Furthermore, the State

mischaracterizes defense counsel’s final plea to the jury to find defendant not guilty.

As shown above, defense counsel only emphasized the serious nature of second-degree

rape, second-degree sexual assault, assault by strangulation. Defense counsel then,

after repeating those three charges, asked the jury to find defendant not guilty.

 Considering defense counsel’s argument in full, it is evident defense counsel

acknowledged defendant’s guilt on the assault on a female charge in an attempt to

cast doubt on the evidence of the more serious charges.

 For the majority of the State’s response, the State does not focus on the

substance of defense counsel’s argument. Instead, the State focuses on defense

counsel’s strategy. The State emphasizes that the uncontroverted evidence was that

defendant admitted to police during the interview that he got physical with the

alleged victim and contends it was a valid trial strategy for defense counsel to accept

the evidence of assault on a female and argue doubt in the evidence of the more severe

charges. The State asserts that this was defendant’s “only viable defense” and

acknowledges that it was successful because defendant was acquitted of the more

severe charges. Thus, the State argues defense counsel was not ineffective and

defendant cannot show prejudice. This argument by the State, however, does not

address the Harbison issue.

 7
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

 “[M]atters of trial strategy . . . are not generally second-guessed by this Court.”

State v. Prevatte, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002), cert. denied, 538 U.S.

986, 155 L. Ed. 2d 681 (2003). However, just as our Supreme Court explained in

Harbison, this Court has explained that

 [a] concession of guilt by a defendant’s counsel has the
 same practical effect as a guilty plea, because it deprives
 the defendant of his right against self-incrimination, the
 right of confrontation and the right to trial by jury.
 Therefore, a decision to make a concession of guilt as a trial
 strategy is, like a guilty plea, a decision which may only be
 made by the defendant and a concession of guilt may only
 be made with the defendant’s consent. Due process
 requires that this consent must be given voluntarily and
 knowingly by the defendant after full appraisal of the
 consequences and a clear record of a defendant’s consent is
 required.

State v. Perez, 135 N.C. App. 543, 547, 522 S.E.2d 102, 106 (1999) (citations omitted),

appeal dismissed and disc. review denied, 351 N.C. 366, 543 S.E.2d 140 (2000).

 [This Court] reject[ed], however, [the] defendant’s
 argument that an acceptable consent requires the same
 formalities as mandated by statute for a plea of guilty. Our
 Supreme Court has found a knowing consent to a
 concession of guilt in compliance with Harbison where the
 record showed the defendant was advised of the need for
 his authorization for the concession, defendant
 acknowledged that he had discussed the concession with
 his counsel and had authorized it, and the defendant
 thereafter acknowledged that his counsel had made the
 argument desired by him.

Id. at 547-48, 522 S.E.2d at 106 (citations omitted).

 8
 STATE V. MCALLISTER

 ARROWOOD, J., dissenting

 Here, defendant does not question the strategy of defense counsel, because that

is not at issue. Defendant only challenges defense counsel’s concession of guilt on the

charge of assault on a female without his authorization. I agree with defendant that

there is nothing in the record to show that he agreed to defense counsel’s concession.

Therefore, under Harbison, there was a per se violation of defendant’s right to

effective assistance of counsel. No further showing is required. Accordingly, I would

hold defendant is entitled to a new trial on the charge of assault on a female, the

underlying offense for habitual misdemeanor assault.

 Defendant also seeks for this Court to review the trial court’s denial of his MAR

pursuant to his second petition for writ of certiorari filed at the same time as his

appellate brief on 17 October 2018. Unlike the majority, I would simply deny

defendant’s second petition as moot because of my determination defendant is

entitled to a new trial on the first issue.

 For the reasons above, I dissent.

 9