IN THE SUPREME COURT OF NORTH CAROLINA

No. 221A19

Filed 25 September 2020

STATE OF NORTH CAROLINA

v.

ANTON THURMAN MCALLISTER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 265 N.C. App. 309, 827 S.E.2d 538 (2019), finding no error in a judgment entered on 22 August 2016 by Judge Richard S. Gottlieb in Superior Court, Forsyth County. This matter was calendared for argument in the Supreme Court on 4 May 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Joshua H. Stein, Attorney General, by Adren L. Harris, Special Deputy Attorney General, for the State-appellee.*

*Joseph P. Lattimore for defendant-appellant.*

DAVIS, Justice.

This Court held in *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), that a criminal defendant suffers a per se violation of his constitutional right to effective assistance of counsel when his counsel concedes the defendant's guilt to the jury without his prior consent. In this case, we consider whether *Harbison* error exists when defense counsel impliedly—rather than expressly—admits the defendant's

guilt to a charged offense. Based on our determination that the rationale underlying *Harbison* applies equally in such circumstances, we reverse the decision of the Court of Appeals and remand with instructions.

**Factual and Procedural Background**

In January 2015, defendant met a woman named Stephanie Leonard during a group session at Insight, a drug treatment facility in Winston-Salem. Within a week of their introduction, defendant and Leonard began an intimate personal relationship and moved into an apartment together that was paid for by Leonard's mother.

On 16 February 2015, Leonard's mother took Leonard grocery shopping and also gave her $75 to purchase various other items she needed. After returning home at approximately 5:00 p.m., Leonard and defendant consumed a bottle of wine over several hours. Around 9:00 p.m., they decided to walk to a nearby BP gas station to purchase cigarettes. As they approached the gas station, Leonard told defendant that she wanted to go to a store to purchase another bottle of wine and started walking away from the gas station. Defendant proceeded to curse and yell at Leonard because he realized that she was in possession of additional money and had not informed him of this fact. In an effort to placate defendant, Leonard gave him $20, at which point he struck her in the face and caused her to fall to the ground and lose her wallet. The two of them continued to argue as defendant began hitting her repeatedly in the face because she could not locate her wallet. He then grabbed Leonard by the arm and started pulling her back toward their apartment. Christopher Jackson, the cashier

working at the gas station during the altercation, called for assistance from law enforcement officers after he saw that a man had "jerked" a woman outside the store and heard "the sound like of [sic] somebody hitting somebody."

Upon returning to the apartment, defendant shoved Leonard through the doorway and told her to be quiet. After unsuccessfully searching for Leonard's wallet inside the apartment, defendant resumed hitting her. Believing that Leonard was hiding the money on her person, defendant removed her clothes. Leonard later described being dragged and repeatedly struck by defendant, which resulted in her bleeding from her face.

After initially telling defendant that she did not know what had happened to her wallet, Leonard subsequently stated that the wallet might be in the kitchen. As they made their way to the kitchen, Leonard attempted to escape the apartment but was caught by defendant. Defendant then dragged her into the living room at which point he got on top of her and resumed hitting her. He then placed his hand over Leonard's mouth and nose and attempted to suffocate her, at which point Leonard began to fight back by hitting defendant in the face and biting his fingers. Leonard's fingers also went into defendant's mouth, and he bit them. Defendant then attempted to suffocate Leonard with a pillow until she made her body go limp to make him believe that she had lost consciousness.

Shortly thereafter, defendant forced Leonard, whose face and hands were covered in blood, to enter the bathroom. The two of them climbed into the bathtub

where defendant washed the blood off of Leonard's body. Upon exiting the bathroom, defendant and Leonard got into bed, and they engaged in sexual intercourse.

On the following day, law enforcement officers from the Winston-Salem Police Department arrived at the apartment to investigate the events that had occurred the previous evening. One of the officers observed injuries to Leonard's hands and face, which he photographed. He also took pictures of numerous blood stains found throughout the apartment. Later that evening, officers located defendant, who agreed to be taken to the police station for a non-custodial interview concerning an investigation involving a missing moped that was unrelated to his altercation with Leonard.

During the interview, which was videotaped and later played for the jury at defendant's trial, he was asked a number of questions about the incident that had occurred the previous night involving Leonard. Defendant stated that when he and Leonard were outside the gas station, he got "kinda mad" at her for wanting to go to another store because he was cold and wanted to go home. When asked why they never actually entered the gas station, defendant responded that he had become "pissed off" at Leonard for not appropriately communicating with him, which eventually led to him pushing her to the ground. He acknowledged that "[he] was wrong for pushing her." Defendant stated that upon their return to the apartment, Leonard communicated her desire to go back out again to buy wine, which prompted the two of them to begin arguing.

Defendant told officers that he and Leonard then got into a "tussle" during which Leonard "retaliate[ed]" in a "rough" manner. Defendant admitted that he "backhanded her" in the face at one point but that he did not mean to hurt her. Defendant stated that for approximately ten minutes there was "a lot of grabbing and tussling," and that afterwards, the two went into the bathroom to clean Leonard up because she was "spitting blood" as a result of the altercation.

When asked if Leonard had been injured in any way during the incident, defendant responded that the following morning he observed that her bottom lip was swollen from when he had "smacked her in the lip." Defendant added that Leonard had bitten his hand when he "grabbed her in the mouth" and that around this same time he had likewise bitten her hand. Later in the interview, defendant denied having forced Leonard to engage in sexual intercourse but stated the following: "[I]f I smacked [her] ass up, then I smacked [her]; I can take the rap for that." Following the interview, defendant was arrested and taken into custody.

Defendant was indicted on charges of (1) habitual misdemeanor assault—based on the underlying offense of assault on a female,[1] (2) assault by strangulation, (3) second-degree sexual offense, and (4) second-degree rape. The case came on for trial in Superior Court, Forsyth County, on 15 August 2016.

---

[1] "A person commits the offense of habitual misdemeanor assault if that person violates any of the provisions of G.S. 14-33 and causes physical injury, or G.S. 14-34, and has two or more prior convictions for either misdemeanor or felony assault, with the earlier of the two prior convictions occurring no more than 15 years prior to the date of the current violation." N.C.G.S. § 14-33.2 (2019).

Prior to opening statements, the State informed the trial court of a potential *Harbison*-related issue regarding defendant's statements to law enforcement officers during his interview, and the following conversation ensued:

> [THE STATE]: The only other thing I would mention, and this would—just in anticipation opening [sic] statement, the defendant did make some admissions in his statement to law enforcement. I don't know if any of that is something that defense counsel is going to address in opening but if so we probably need to have an inquiry regarding—
>
> THE COURT: *Harbison.*
>
> [THE STATE]: Right—admissions prior to.

The trial court then engaged in the following exchange with defense counsel:

> THE COURT: Does the defense have any *Harbison* issues?
>
> [DEFENSE COUNSEL]: Not immediately, Your Honor. That's not something I was expecting yet.
>
> THE COURT: Are you expecting to make any comments in your opening with regard to admissions?
>
> [DEFENSE COUNSEL]: Well, Judge, we have a lot to say about how and why he was interrogated which may brush up against—
>
> THE COURT: Well, can you get more specific than that. Because I want to make sure your client understands that the State has the burden to prove each and every element of each claim and if you're going to step into an admission during opening then I need to make sure that he understands that and he's authorized you to do that.
>
> [DEFENSE COUNSEL]: Not in opening, I can stipulate to that.

> THE COURT: Well—okay. Let's rereview that when we get
> back from lunch. . . .

No other discussion of any *Harbison*-related issues occurred on the record during the remainder of the trial. The State presented testimony from Leonard, Leonard's mother, Jackson, four law enforcement officers and two detectives with the Winston-Salem Police Department, two forensic services technicians from the Winston-Salem Police Department and the forensics services squad supervisor, a nurse and a physician's assistant from the Forsyth Medical Center emergency department who treated Leonard's physical injuries, and a nurse from the Forsyth Medical Center who performed a sexual assault examination on Leonard. Defendant did not present any evidence at trial.

During his closing argument, defense counsel referred to defendant's 17 February 2015 videotaped interview with law enforcement officers, which had been entered into evidence by the State and played for the jury during the State's case in chief. Specifically, defense counsel stated the following:

> Now, the [State] went to great length to use the defendant's statements. These are his words, what he said. Well, let's start with the conditions under which he gave those statements. 9:00 at night, surrounded by cops, pulled off the street to make a voluntary statement. He goes in. He starts talking to them about the moped, which was all a ruse as we know, and indicates he's had a few beers but they ask him "you want to talk? Sure I'll talk. I want to help you out any way I can," is what he kept saying. You heard him admit that things got physical. You heard him admit that he did wrong, God knows he did. They got in some sort of scuffle or a tussle or whatever they want to

call it, she got hurt, he felt bad, and he expressed that to detectives. Now, they run with his one admission and say "well, then everything Ms. Leonard—everything else Ms. Leonard said must be true." Because he was being honest, they weren't honest with him.

Later in his closing argument, defense counsel stated to the jurors that "you may dislike Mr. McAllister for injuring Ms. Leonard, that may bother you to your core but he, without a lawyer and in front of two detectives, admitted what he did and only what he did. He didn't rape this girl." Defense counsel concluded his closing argument by stating the following:

> I asked you at the beginning [to] make the State prove their case, make them. Have they? Anything but conjecture and possibility? All I ask is that you put away any feelings you have about the violence that occurred, look at the evidence and think hard. Can you convict this man of rape and sexual offense, assault by strangulation based on what they showed you? You can't. Please find him not guilty.

On 22 August 2016, the jury returned a verdict finding defendant guilty of assault on a female and not guilty of all other charged offenses. The trial court entered judgment on one count of habitual misdemeanor assault[2] and sentenced defendant to a term of fifteen to twenty-seven months imprisonment.

Defendant failed to give notice of appeal following his conviction. On 11 August 2017, however, he filed a petition for writ of certiorari to the Court of Appeals, which was allowed. At the Court of Appeals, defendant argued that his defense counsel

---

[2] Defendant stipulated prior to trial to the existence of two prior assault convictions.

improperly conceded his guilt to the assault on a female charge during closing arguments, thereby resulting in a denial of his constitutional right to effective assistance of counsel pursuant to this Court's decision in *Harbison*.

In a divided opinion, the Court of Appeals majority held that defendant was not denied his right to effective assistance of counsel. *State v. McAllister*, 265 N.C. App. 309, 827 S.E.2d 538 (2019). The majority concluded that where "counsel admits an element of the offense, but does not admit defendant's guilt of the offense, counsel's statements do not violate *Harbison* to show a violation of the defendant's Sixth Amendment rights." *Id.* at 317, 827 S.E.2d at 544.

Judge Arrowood dissented, expressing his belief that defendant had shown a per se violation of his right to effective assistance of counsel when defense counsel elected "to highlight specific evidence that defendant physically injured the alleged victim and argued to the jury that defendant honestly admitted to police what he did." *Id.* at 323, 827 S.E.2d at 547 (Arrowood, J., dissenting). Judge Arrowood further stated his view that "[c]onsidering defense counsel's argument in full, it is evident defense counsel acknowledged defendant's guilt on the assault on a female charge in an attempt to cast doubt on the evidence of the more serious charges." *Id.* On 11 June 2019, defendant filed a notice of appeal based upon the dissent with this Court.[3]

**Analysis**

---

[3] Defendant also filed a petition for discretionary review in which he sought review of an additional issue, which was denied by the Court.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court held that "the right to counsel is the right to the effective assistance of counsel," *id.* at 686 (citation omitted), and announced that in certain contexts "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice," *id.* at 692. In *Harbison*, this Court held that defense counsel's admission of his client's guilt to a charged offense during an argument to the jury— without the client's prior consent—was one such example of an act so likely to be prejudicial that it results in per se reversible error. *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507–08.

In the present appeal, defendant contends that this is precisely what occurred at his trial in that his defense counsel impliedly conceded his guilt to the charge of assault on a female without his prior consent. In order to analyze his argument, we deem it instructive to review in some detail both the *Harbison* decision and other cases from this Court applying the principles set out therein to situations in which a defendant's attorney was alleged to have conceded his client's guilt to a charged offense during his argument to the jury.

In *Harbison*, the defendant was charged with the murder of his ex-girlfriend's boyfriend and the assault of his ex-girlfriend after shooting and severely injuring her. *Harbison*, 315 N.C. at 177, 337 S.E.2d at 505–06. The defendant's theory at trial was that he acted in self-defense in shooting the victims, but during closing arguments, his defense counsel stated the following:

> Ladies and Gentlemen of the Jury, I know some of you and
> have had dealings with some of you. I know that you want
> to leave here with a clear conscious [sic] and I want to leave
> here also with a clear conscious [sic]. I have my opinion as
> to what happened on that April night, and I don't feel that
> [the defendant] should be found innocent. I think he should
> do some time to think about what he has done. I think you
> should find him guilty of manslaughter and not first[-]
> degree [murder].

*Id*. at 177–78, 337 S.E.2d at 506 (first and second alterations in original). On appeal,

the defendant asserted that defense counsel's admission of his guilt and request that

the jury find him guilty of manslaughter constituted ineffective assistance of counsel

in violation of his Sixth Amendment rights. *Id*. at 178, 337 S.E.2d at 506.

In addressing the defendant's argument, we noted that "[a]lthough this Court

still adheres to the application of the *Strickland* test in claims of ineffective assistance

of counsel, there exist 'circumstances that are so likely to prejudice the accused that

the cost of litigating their effect in a particular case is unjustified.' " *Id*. at 179, 337

S.E.2d at 507 (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). We

proceeded to hold that "when counsel to the surprise of his client admits his client's

guilt, the harm is so likely and so apparent that the issue of prejudice need not be

addressed." *Id*. at 180, 337 S.E.2d at 507.

Our ruling was based largely on the principle that a defendant has an absolute

right to plead not guilty—a decision that must be made knowingly and voluntarily by

the defendant himself and only after he is made aware of the attendant consequences

of doing so. *Id*. We stated that "[w]hen counsel admits his client's guilt without first

obtaining the client's consent, . . . [t]he practical effect is the same as if counsel had entered a plea of guilty without the client's consent" and denied his client the right to have his guilt determined by a jury. *Id*. Accordingly, we concluded that "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Id*. at 180, 337 S.E.2d at 507–08. As a result, we awarded the defendant a new trial. *Id*. at 180–81, 337 S.E.2d at 508.

We reached a similar result in *State v. Matthews*, 358 N.C. 102, 591 S.E.2d 535 (2004). In *Matthews*, the defendant was indicted for, among other things, first-degree murder. During closing arguments, defense counsel stated the following:

> You have a possible verdict of guilty of second-degree murder. And then the third possibility is not guilty. I've been practicing law twenty-four years and I've been in this position many times. And this is probably the first time I've come up in front of the jury and said *you ought not to even consider that last possibility*.

> And I'm not up here and I'm not telling you that that's a possibility. I'm not saying you should find Mr. Matthews not guilty. That's very unusual. And it kind of cuts against the grain of a defense lawyer. But I'm telling you in this case you ought not to find him not guilty because he is guilty of something.

*Id*. at 106, 591 S.E.2d at 539. Defense counsel later stated that "[w]hen you look at the evidence . . . you're going to find that he's guilty of second-degree murder." *Id*.

In determining that these statements constituted a per se violation of the defendant's constitutional right to effective assistance of counsel, we held that "[b]ecause the record does not indicate defendant *knew* his attorney was going to concede his guilt to second-degree murder, we must conclude defendant's attorney made this concession without defendant's consent, in violation of *Harbison*." *Id.* at 109, 591 S.E.2d at 540. We therefore concluded that the defendant was entitled to a new trial. *Id.* at 109, 591 S.E.2d at 540–41.

The defendant in *State v. Fisher*, 318 N.C. 512, 350 S.E.2d 334 (1986), was indicted for first-degree murder after stabbing the victim. During closing arguments, defense counsel—during the course of describing the elements of various homicide offenses—stated that "[s]econd[-]degree [murder] is the unlawful killing of a human being with no premeditation and no deliberation but with malice, illwill. You heard [the defendant] testify, there was malice there . . . ." *Id.* at 533, 350 S.E.2d at 346. Defense counsel went on to inform the jury that the verdict sheet would enable it to find defendant not guilty, despite the defendant's presence at the scene of the killing. *Id.*

On appeal from his conviction for first-degree murder, the defendant asserted that he had suffered a violation of his constitutional rights under *Harbison* due to the fact that his defense counsel admitted to the jury that the killing was done with malice. *Id.* at 532, 350 S.E.2d at 346. We held that the case was "factually distinguishable from *Harbison* in that the defendant's counsel never clearly admitted

guilt" but rather simply "stated there was malice [and] . . . told the jury that they could find the defendant not guilty." *Id.* at 532–33, 350 S.E.2d at 346.

In *State v. Thomas*, 329 N.C. 423, 407 S.E.2d 141 (1991), the defendant was convicted of first-degree murder and first-degree sexual offense. On appeal, he argued that he suffered from ineffective assistance of counsel because his defense counsel conceded that he participated in the charged sexual act without his permission. During closing arguments, defense counsel stated the following:

> Don't let me mislead you to think that I in any way condone what occurred in the relationship in respect to the sexual assault. . . .
>
> Again, let me tell you that I don't in any way condone what [the defendant] did in that respect . . . .
>
> In fact, it is illegal to do exactly what Dr. Hudson described to you was done in this case, that is, to insert the telephone receiver into her vagina after she was dead. . . . It is the crime of . . . desecrating the body of the person that is dead.

*Id.* at 441, 407 S.E.2d at 153.

We held that those statements were not an admission of the defendant's guilt as to the sexual offense charge because, "[u]nlike defense counsel in *Harbison*, who admitted his client's guilt and asked the jury to return a verdict of guilty of manslaughter . . . defense counsel here did not admit defendant's guilt to first-degree sexual offense or to any lesser included offense." *Id.* at 442, 407 S.E.2d at 153. We observed that defense counsel had merely informed the jury that the act alleged

would only constitute the offense of desecrating a corpse—a crime with which the defendant was not charged. *Id.* at 442, 407 S.E.2d at 153–54.

In *State v. Greene*, 332 N.C. 565, 422 S.E.2d 730 (1992), the defendant was charged with first-degree murder after slapping a child in the head and ultimately killing him. The defendant testified at trial and admitted to slapping the victim but also stated that he did not mean to harm him. *Id.* at 570, 422 S.E.2d at 732. One of the State's witnesses testified that the defendant had told him that he had hit and kicked the child. *Id.* at 573, 422 S.E.2d at 734. During closing argument, defense counsel stated the following:

> [The defendant] didn't have anything to do with me being here. Don't use what I've said and done against him. Wouldn't be right. I've done my best. I've plowed the field. And in my opinion, you probably won't turn him free—find him not guilty. And you very easily, I can see, that that slap was negligent and harder than it ought to have been and at that time, it was reckless disregard, and the judge will charge you on that at the end of those four [sic]— involuntary manslaughter. I don't say you should find that, but I concede—sitting on this jury—but I contend, ladies and gentlemen, there's no premeditation and deliberation.

*Id.* at 570, 422 S.E.2d at 733.

Upon the conclusion of defense counsel's closing argument, the prosecutor approached the bench and expressed his concern that defense counsel's closing argument may have been improper on the grounds that it constituted an admission of guilt without the defendant's consent. *Id.* The trial court then asked the defendant if he wanted to give his counsel another opportunity to argue that he was innocent of

all charges, and the defendant answered affirmatively. *Id*. at 571, 422 S.E.2d at 733.

Defense counsel then addressed the jury as follows:

> Now, again, coming to the close, the defendant contends there is no evidence to find him guilty of first[-]degree murder—that is, got to find all six or five—no premeditation, nobody—nothing showing he even, for a blink of a minute, thought about killing somebody. No deliberation going through his mind. Now is the time to kill him. No malice. No hatred. No deliberately, like a baseball bat as they illustrated in other things. No malice. In fact, all love before and after. All love.
>
> As to voluntary manslaughter, no intent down there. No intent to murder. No reckless disregard of life. Again, all love except the blows and the reflex motion, and it was too hard.
>
> But we don't contend—he didn't know it was going to be too hard. I argue and contend that he didn't know it was going to be too hard. He didn't know what he was doing.
>
> Most of us, up before this, didn't know that a slap on the face could kill anybody. I mean, even a young child. Busted his lip, he may.
>
> Now, it's been some people with nursing training and all, I'm sure. Those are not supposed to be a lot of training, but even involuntary manslaughter.
>
> We contend that [the defendant] ought to leave here a free man. . . .

*Id*. The defendant was found guilty of first-degree murder.

The defendant argued on appeal that defense counsel—without his consent— had represented to the jury that it should find him guilty of involuntary manslaughter in violation of *Harbison*. In rejecting his argument, we noted that

-16-

although counsel told the jury that it could find that the "slap was negligent," that it was "harder than it ought to have been," and that "it was reckless disregard," he ultimately stated "I don't say you should find that." *Id*. at 571–72, 422 S.E.2d 733. We explained that there was no per se constitutional violation because "the argument was that the defendant was innocent of all charges but if he were to be found guilty of any of the charges it should be involuntary manslaughter because the evidence came closer to proving that crime than any of the other crimes charged." *Id*. at 572, 422 S.E.2d at 733–34. Accordingly, we held that "[t]his is not the equivalent of asking the jury to find the defendant guilty of involuntary manslaughter and the rule of *Harbison* does not apply." *Id*. at 572, 422 S.E.2d at 734. We further stated that "[w]e do not find anything . . . that approaches an admission of guilt" because "[t]he clear and unequivocal argument was that the defendant was innocent of all charges." *Id*.

In *State v. Harvell*, 334 N.C. 356, 432 S.E.2d 125 (1993), the defendant was indicted for first-degree murder and convicted of that offense. He contended on appeal that his defense counsel had improperly told the jury that it should find him guilty of voluntary manslaughter. *Id*. at 361, 432 S.E.2d at 127. During closing arguments, defense counsel argued that the defendant was not guilty of first-degree or second-degree murder and then stated the following: "I submit to you that based upon the evidence presented in terms of a criminal offense, that the one that most closely—or the one that is most closely kind [sic] to this is the offense of voluntary manslaughter, that being there was provocation." *Id*. We held that defense counsel's statements did

not constitute *Harbison* error because "defendant's counsel never conceded that the defendant was guilty of any crime" and did not say anything that was "the equivalent of admitting that the defendant was guilty." *Id.* at 361, 432 S.E.2d at 128. Instead, counsel simply stated that if the evidence did tend to show that the defendant had committed a crime, then that crime was voluntary manslaughter. *Id.*

The defendant in *State v. Hinson*, 341 N.C. 66, 459 S.E.2d 261 (1995), was convicted of first-degree murder. He argued on appeal that his defense counsel had conceded his guilt during closing argument by referring to "Mr. Brown"—an individual who had testified that he was with the defendant when the killing took place and had taken a plea deal in exchange for his testimony—as being responsible for the murder, thereby implicating the defendant in the crime. *Id.* at 78, 459 S.E.2d at 268. Specifically, defense counsel stated the following:

> Mr. Brown, when you [sic] going to stand up and take responsibility, Mr. Brown? Mr. Brown wasn't a tool. He was the engine. He was the engine that made everything possible. He is the tool without which [the defendant] could not . . . even have gotten out of his yard. But Mr. Brown's going to be home for Christmas apparently.

*Id.* at 77–78, 459 S.E.2d at 268 (first alteration in original). We held that this case was "wholly distinguishable from *Harbison*" because "nowhere in the record did defense counsel concede that [the] defendant himself committed any crime whatsoever" and that, to the contrary, he maintained throughout the trial that Mr.

Brown—rather than the defendant—had killed the victim. *Id.* at 78, 459 S.E.2d at 268.

In *State v. Wiley*, 355 N.C. 592, 565 S.E.2d 22 (2002), the defendant was convicted of first-degree murder and argued on appeal that *Harbison* error had occurred during his defense counsel's opening statement when counsel stated that the defendant was at the scene of the crime and that physical evidence linked him to the scene. *Id.* at 618, 565 S.E.2d at 41. In her opening statement, defense counsel asserted that the identity of the killer and the credibility of the witnesses were the chief issues in the trial. *Id.* Later in her remarks, defense counsel stated the following:

> [DEFENSE COUNSEL:] You will only hear one person testify who was present or anywhere near present at the time that happened, and that person is Alicia Doster. She was fourteen at the time it happened. She was a runaway who stole her mother's car and went to stay in an abandoned house in the neighborhood. It was a house where many of the young kids stayed and hung out. . . .
>
> There's evidence that there was smoking and drinking and some drug use going on at that house. Now, she'll tell you that three people were involved and, you know, that's not disputed. Three people were apparently involved in that. The first one is Alicia Doster, and she has made a deal with the State of North Carolina to testify in this case. . . .
>
> Now, the second person who you'll hear about is [the defendant], and he's sitting in this courtroom today . . . .
>
> Now, there is one [more] person who you won't see here, you won't hear from him, you won't see him, you won't hear anything from him at all, and that is Justin Pallas.

And he's not present in the courtroom and he won't offer any testimony at all.

. . . .

[DEFENSE COUNSEL]: He was present at the time that all of this happened, and Miss Doster will certainly testify to that. . . .

. . . .

You will hear and see plenty of physical evidence, as well. *Not much of this physical evidence will put [the defendant] at the scene of the crime* or at the scene where the automobile was disposed of. There will be no fingerprints on the car that belonged to [the defendant]. You will hear that six cigarette butts were found in the car. Three of those belonged to two different males who were not identified. Don't know who put those cigarettes in the car or when. Don't know whose they were.

. . . .

. . . Nothing else was found in the scene—at the scene that belonged to [the defendant]. None of [the defendant's] fingerprints were found on the alleged murder weapon.

*Id*. at 618–19, 565 S.E.2d at 41–42 (first and third alterations in original) (emphasis added).

In rejecting the defendant's argument based on *Harbison*, we noted that "[a]dmitting a fact is not equivalent to an admission of guilt." *Id*. at 620, 565 S.E.2d at 42 (citing *State v. Strickland*, 346 N.C. 443, 454, 488 S.E.2d 194, 200 (1997)). We further determined that "[a]lthough it is arguable that defense counsel signaled [that] some physical evidence would be presented linking defendant to [the victim's] car,

counsel made it clear that such evidence was of dubious validity because its origin was unknown." *Id.* at 619, 565 S.E.2d at 42. Accordingly, we held that "[p]laced in context, [defense counsel's] statements hardly constitute an admission." *Id.*

In *State v. Roache*, 358 N.C. 243, 595 S.E.2d 381 (2004), the defendant was convicted of five counts of first-degree murder. On appeal, he argued that a *Harbison* violation had occurred because during opening statements, his counsel recounted how the defendant had shot another man in the head during the same crime spree that included the killings for which he was on trial. *Id.* at 278, 595 S.E.2d at 404–05. We held that defense counsel's statement was not a per se violation of the defendant's right to effective assistance of counsel. *Id.* at 284, 595 S.E.2d at 408. We noted that "[t]he act in *Harbison* that this Court found merited a new trial was counsel's admission of legal guilt as to the crime for which the defendant had been indicted and for which the defendant was being tried." *Id.* at 283, 595 S.E.2d at 408. As such, because the shooting referenced by defense counsel in the opening statement "was not at issue in this trial . . . this defendant was not harmed in the same manner as the defendant in *Harbison*." *Id.*

The defendant in *State v. Gainey*, 355 N.C. 73, 558 S.E.2d 463 (2002), was indicted for first-degree murder, first-degree kidnapping, and robbery with a dangerous weapon. While making his opening statement and closing argument to the jury, defense counsel noted the defendant's involvement in the events surrounding the death of the victim and argued that "if he's guilty of anything, he's guilty of

accessory after the fact. He's guilty of possession of a stolen vehicle." *Id.* at 93, 558

S.E.2d at 476. On appeal following a conviction on all charges, the defendant argued

that he was denied the right to effective assistance of counsel because his defense

counsel conceded his guilt without first receiving his express permission to do so. *Id.*

at 92, 558 S.E.2d at 476. We held that defense counsel's statements did not rise to

the level of *Harbison* error. *Id.* at 93, 558 S.E.2d at 476.

> [A]rgument that the defendant is innocent of all charges, but if he is found guilty of any of the charges it should be of a lesser crime because the evidence came closer to proving that crime than any of the greater crimes charged, is not an admission that the defendant is guilty of anything, and the rule of *Harbison* does not apply.
>
> . . . .
>
> In the present case, defense counsel never conceded that defendant was guilty of any crime. Counsel merely noted defendant's involvement in the events surrounding the death of the victim, arguing that "if he's guilty of anything, he's guilty of accessory after the fact. He's guilty of possession of a stolen vehicle." This was hardly the equivalent of admitting that defendant was guilty of the crime of murder. Defendant has taken defense counsel's statements out of context to form the basis of his claim, and he fails to note the consistent theory of the defense that defendant was not guilty.

*Id.* at 92–93, 558 S.E.2d at 476.

In *State v. Campbell*, 359 N.C. 644, 617 S.E.2d 1 (2005), the defendant was

convicted of first-degree murder, and on appeal he raised a *Harbison* claim after his

defense counsel conceded his guilt to the lesser-included offense of second-degree

murder without his prior consent. *Id*. at 694, 617 S.E.2d at 32. During closing

arguments, defense counsel stated the following:

> And what I'm telling you folks right now, that right there is enough for you to have reasonable doubt. The fact that you have one expert who is saying [sic] can't form the specific intent to either rob or kill and the [S]tate's own expert comes in and says, I can't rule it out 100 percent, there's your reasonable doubt right there. That's all you need. That's the key to this case. That's all you need. You weigh the evidence out. You make that determination. But right there is all the reasonable doubt you would need in this case.
>
> . . . .
>
> Again, I submit to you, as I think I said earlier, not every homicide is a first[-]degree murder case, and there's plenty of second[-]degree murder cases out there that are a whole lot bloodier and a whole lot more gory and a whole lot more horrific than first[-]degree murder cases. *The only difference is a second[-]degree murder case lacks that specific intent element, and I submit to you that's where we're at in this case, folks.* There is so much going on, there is so much going on in this case. There is plenty of hooks for you to hang your hat on and find reasonable doubt in this case.

*Id*. at 694–95, 617 S.E.2d at 32. We held that the above-quoted statement was

"distinguishable from that made by the *Harbison* attorney and does not amount to

ineffective assistance" because defense counsel was not conceding guilt, but rather

"was arguing to the jury that[ ] without specific intent, the most serious crime for

which defendant could be convicted would be second-degree murder." *Id*. at 696,

617 S.E.2d at 33.

Finally, the defendant in *State v. Goss*, 361 N.C. 610, 651 S.E.2d 867 (2007), was convicted of first-degree murder. The sole issue for resolution at trial was whether he was guilty of first-degree or second-degree murder. During closing arguments, defense counsel stated that "[defendant's] statement alone guarantees he'll serve a substantial amount of time in prison and face the terrible consequences of a *first[-]degree* murder conviction." *Id.* at 622, 651 S.E.2d at 875 (first alteration in original). At the end of the closing argument, defense counsel asked the jury to "return the verdict that the evidence supports, *guilty of second[-]degree murder.*" *Id.* at 625, 651 S.E.2d at 876.

The defendant asserted on appeal that his defense counsel's reference to first-degree murder in the initial statement quoted above constituted a concession of his guilt of that crime in violation of *Harbison*. *Id.* at 622–23, 651 S.E.2d at 875. We held that there was no error under *Harbison* because "the only issue even contested at defendant's trial was whether he had committed first-degree or second-degree murder, and trial counsel's entire closing argument was directed toward undercutting the first two theories of first-degree murder advanced by the State." *Id.* at 625, 651 S.E.2d at 876. With regard to defense counsel's assertion that the defendant was guaranteed to suffer the consequences of a *first-degree* murder conviction, we noted that "it appears that [defense counsel's] reference to first-degree murder was accidental and went unnoticed," and we stated that this Court would not "interpret

*Harbison* to allow a defendant to seize upon a *lapsus linguae* uttered by trial counsel in order to be awarded a new trial." *Id.*

* * *

Having reviewed this Court's case law applying *Harbison* in the context of concessions of guilt alleged to have been made by defense counsel during closing argument, we must now apply those principles to the present case. Defendant's argument under *Harbison* relates to his attorney's statements to the jury during closing argument that were relevant to the offense of assault on a female—the only one of the four charges for which he was convicted. "The elements of an assault on a female are (1) an assault (2) upon a female person (3) by a male person (4) who is at least eighteen years old." *State v. Wortham*, 318 N.C. 669, 671, 351 S.E.2d 294, 296 (1987) (citing N.C.G.S. § 14-33(b)(2)). The trial court instructed the jury that in order to convict defendant of assault on a female, the State was required to prove that (1) defendant "intentionally assaulted the alleged victim by hitting her"; (2) that "the alleged victim was a female person"; and (3) that the "defendant was a male person at least 18 years of age."

Based on our review of the trial transcript, it is readily apparent that the goal of defense counsel in his closing argument was to rebut the State's evidence in support of the rape, sexual offense, and assault by strangulation charges—offenses that carried penalties significantly greater than that for the crime of assault on a female. During his closing argument, defense counsel never expressly mentioned the charge

of assault on a female but repeatedly addressed the other three charges against defendant. At the conclusion of the closing argument, he asked the jury to find defendant not guilty of the charges of "rape[,] sexual offense, [and] assault by strangulation." Once again, no mention was made by him of the assault on a female charge.

Thus, this is not a case like *Matthews* or *Harbison* itself in which the defendant's attorney expressly asked the jury to find him guilty of a specific charged offense. We agree with defendant, however, that a *Harbison* violation is not limited to such instances and that *Harbison* should instead be applied more broadly so as to also encompass situations in which defense counsel impliedly concedes his client's guilt without prior authorization.

The Court of Appeals reached a similar conclusion in *State v. Spencer*, 218 N.C. App. 267, 720 S.E.2d 901 (2012). In *Spencer*, the defendant was convicted of eluding arrest with a motor vehicle, assault with a deadly weapon on a government official, and resisting a public officer. *Id.* at 267, 720 S.E.2d at 902. The defendant argued on appeal that his defense counsel had conceded his guilt to the charges of resisting a public officer and eluding arrest by making certain admissions to the jury without obtaining his prior consent. *Id.* at 275, 720 S.E.2d at 906. During closing arguments, counsel stated that the defendant "chose to get behind the wheel after drinking, and he chose to run from the police" and that the law enforcement officer "was already out of the way and he just kept on going, kept running from the police." *Id.* The Court

of Appeals determined that defense counsel's "statements cannot be construed in any other light than admitting the defendant's guilt." *Id.* at 276, 720 S.E.2d at 906.

We believe that defense counsel's statements here similarly amounted to an implied admission of defendant's guilt of the crime of assault on a female. During the closing argument, counsel stated the following with regard to defendant's videotaped interview: "You heard him admit that things got physical. You heard him admit that he did wrong. God knows he did." Shortly thereafter, he stated with regard to defendant's videotaped interview that defendant was "being honest" with law enforcement officers about his altercation with Leonard. Later in the closing argument, defense counsel stated the following: "Jury, what I'm asking you to do is you may dislike Mr. McAllister for injuring Ms. Leonard, that may bother you to your core but he, without a lawyer and in front of two detectives, admitted what he did and only what he did." At the conclusion of the closing argument, he stated the following:

> I asked you at the beginning [to] make the State prove their case, make them. Have they? Anything but conjecture and possibility? All I ask is that you put away any feelings you have about the violence that occurred, look at the evidence and think hard. Can you convict this man of rape and sexual offense, assault by strangulation based on what they showed you? You can't. Please find him not guilty.

The above-quoted statements are problematic for several reasons. First, defense counsel attested to the accuracy of the admissions made by defendant in his videotaped statement by informing the jurors that defendant was "being honest."

During that interview, defendant admitted—among other things—that he (1) pushed Leonard to the ground outside of the gas station; (2) "backhanded" her in the face; (3) "smacked her in the lip"; (4) "grabbed her in the mouth" and also bit her hand; and (5) "smacked [her] ass up" and that he "can take the rap for that." By representing to the jury that defendant was "being honest" when he made those statements during the interview, defense counsel vouched for their truth, and, as such, there was no reason for the jury to question the validity of any of defendant's admissions.

Second, defendant's attorney not only reminded the jury that defendant had admitted he "did wrong" during the altercation in which Leonard got "hurt," but defense counsel then proceeded to also state his own personal opinion that "God knows he did [wrong]"—thereby implying that there was no justification for defendant's use of force against Leonard. Shortly thereafter, he acknowledged that the jurors might "dislike [defendant] for injuring Ms. Leonard" and that defendant's actions "may bother you to your core." He also referred to the "violence" that had occurred during the altercation.

Finally, at the very end of his closing argument, defense counsel asked the jury to find defendant not guilty of every offense for which he had been charged except for the assault on a female offense. By virtue of defense counsel overtly seeking a not guilty verdict as to the three more serious charges against defendant, yet conspicuously omitting mention of the assault on a female charge—indeed, by not expressly mentioning that charge at all during the entire closing argument—the only

logical inference in the eyes of the jury would have been that defense counsel was implicitly conceding defendant's guilt as to that charge.

This Court's post-*Harbison* case law has suggested that a per se violation of a defendant's right to effective assistance of counsel can occur where defense counsel's statements are the functional equivalent of an outright admission of the defendant's guilt as to a charged offense. *See Strickland*, 346 N.C. at 454, 488 S.E.2d at 200 ("Defense counsel's statements were not the equivalent of asking the jury to find defendant guilty of any charge, and therefore, *Harbison* does not control."); *Harvell*, 334 N.C. at 361, 432 S.E.2d at 128 (holding that there was no *Harbison* error where defense counsel's statements were "not the equivalent of admitting that the defendant was guilty of any crime"); *Greene*, 332 N.C. at 572, 422 S.E.2d at 734 ("This is not the equivalent of asking the jury to find the defendant guilty[,] . . . and the rule of *Harbison* does not apply."). Today, we expressly hold that such an implied admission of guilt can, in fact, constitute *Harbison* error.

The Court of Appeals majority applied an overly strict interpretation of *Harbison* here by confining its analysis to (1) whether defense counsel had expressly conceded defendant's guilt of the assault on a female charge; or (2) whether counsel's statements "checked the box" as to each element of the offense.[4] We believe, however,

---

[4] For example, the Court of Appeals majority noted that defense counsel did not concede that the age requirement for the offense of assault on a female had been satisfied. However, the age of defendant was not in dispute.

that such an approach reflects too cramped of a construction of *Harbison*. Although an overt admission of the defendant's guilt by counsel is the clearest type of *Harbison* error, it is not the exclusive manner in which a per se violation of the defendant's right to effective assistance of counsel can occur. In cases where—as here—defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense, *Harbison* error exists unless the defendant has previously consented to such a trial strategy. In such cases, the defendant is prejudiced in the same manner and to the same degree as if the admission of guilt had been overtly made. Thus, our decision in this case is faithful to the rationale underlying *Harbison*.

We recognize that on the facts of this case, such a trial strategy may well have been in defendant's best interests given his acquittal of the three most serious charges against him. But that does not change the fact that under *Harbison* and its progeny defense counsel was required to obtain the informed consent of defendant before embarking on such a strategy that implicitly acknowledged to the jury his guilt of a separately charged offense.

Finally, we emphasize that a finding of *Harbison* error based on an implied concession of guilt should be a rare occurrence. However, the unique circumstances contained in the record before us make this the unusual case in which such a finding is appropriate.

In reaching a different result, the dissent falls into the trap of conflating the

*Harbison* issue with the entirely separate issue of whether defense counsel's strategy was effective in terms of obtaining an acquittal on the more serious offenses with which defendant was charged. In so doing, the dissent misses the point. As noted above, the relevant question under *Harbison* is *not* whether conceding defendant's guilt as to the least serious offense was a sound trial strategy. Rather, our inquiry must focus on whether defense counsel admitted defendant's guilt to a charged offense without first obtaining his consent.

The dissent fails in its attempt to characterize defense counsel's statements as a request for the jury to find defendant not guilty of the assault on a female charge. This failure is hardly surprising given that defense counsel—among other things—affirmed the veracity of defendant's statements in his videotaped interview in which he admitted to having engaged in assaultive conduct toward Leonard and then conceded that defendant had acted wrongfully. The unmistakable message sent by defense counsel to the jury was that defendant was, in fact, guilty of the assault on a female charge—a message that was magnified by defense counsel's failure to ask for a not guilty verdict as to that charge as he did for the other three charges. The dissent's interpretation of defense counsel's closing argument is based on a tortured construction of the words used by defendant's attorney—words that could not rationally have been understood by the jury as anything other than a concession of defendant's guilt as to this charge.

Finally, the dissent makes the assertion that as a result of our decision today

defense attorneys will be hesitant to engage in the strategy of acknowledging that their client engaged in some form of moral wrongdoing in the hope of both enhancing their own credibility and personalizing the defendant in the eyes of the jury. This reluctance will exist, the dissent predicts, due to a fear that their representation will be deemed to be constitutionally deficient if they employ such an approach. The dissent's concern is misguided, however, as nothing in our decision today precludes such a strategy. But if that tactic includes either an explicit or implicit admission of the defendant's guilt of a charged offense, then prior consent from the defendant must be obtained. It is the defendant—not his attorney—whose liberty is placed at risk as a result of such a strategic decision.

\* \* \*

Having determined that defense counsel impliedly conceded defendant's guilt of the offense of assault on a female, the only remaining issue is whether he did so without defendant's prior consent. The record reflects that before trial, the State advised the trial court of the potential for a *Harbison* issue in light of the statements contained in defendant's videotaped interview. In response, the trial court made a brief inquiry to defense counsel as to whether his opening statement was likely to trigger any *Harbison*-related concerns, noting that defendant's consent would be required before any admissions of guilt could be made to the jury. After defense counsel replied that he would not be making any such admissions during his opening statement, the trial court stated its intention to revisit the issue following the lunch

recess. The record does not reveal any further discussion taking place during the remainder of the trial as to the possibility of *Harbison*-related issues arising.

This Court has stated "that an on-the-record exchange between the trial court and the defendant is the preferred method of determining whether the defendant knowingly and voluntarily consented to an admission of guilt during closing argument," but we have also "declined to define such a colloquy as the sole measurement of consent." *State v. Thompson*, 359 N.C. 77, 119–20, 604 S.E.2d 850, 879 (2004) (citing *State v. McDowell*, 329 N.C. 363, 386–87, 407 S.E.2d 200, 213 (1991)). Moreover, we have made clear that the absence of any indication in the record of defendant's consent to his counsel's admissions will not—by itself—lead us to "presume defendant's lack of consent." *State v. Boyd*, 343 N.C. 699, 722, 473 S.E.2d 327, 339 (1996); *see State v. House*, 340 N.C. 187, 196, 456 S.E.2d 292, 297 (1995) ("This Court will not presume from a silent record that defense counsel argued defendant's guilt without defendant's consent.").

As a result, we believe that the appropriate remedy is to remand this case to the Superior Court, Forsyth County, for an evidentiary hearing to be held as soon as practicable for the sole purpose of determining whether defendant knowingly consented in advance to his attorney's admission of guilt to the assault on a female charge. *See State v. Morganherring*, 350 N.C. 701, 713, 517 S.E.2d 622, 630 (1999); *see also State v. Thomas*, 327 N.C. 630, 631, 397 S.E.2d 79, 80 (1990). Following the evidentiary hearing, the trial court shall expeditiously make findings of fact and

conclusions of law and enter an order. The trial court shall then certify the order, the

findings of fact and conclusions of law, and the transcript of the hearing to this Court.

*See Thomas*, 327 N.C. at 631, 397 S.E.2d at 80.

## Conclusion

We reverse the decision of the Court of Appeals and remand with instructions

as set forth above.

REVERSED AND REMANDED.

Justice NEWBY dissenting.

A criminal defense attorney may concede that a defendant has engaged in bad behavior without admitting that the defendant has committed one of the crimes charged. Indeed, it may be in the defendant's best interests for his attorney to do so. Admitting to the jury that a defendant has behaved poorly can enhance defense counsel's credibility and help the jury better understand what is really at issue in a case. The majority's decision today limits defense counsel's ability to pursue this common strategy and starts the Court down a slippery slope with no obvious stopping point. The majority, content to refrain from considering whether defense counsel's statements actually harmed defendant, leaps beyond our precedent and says we must assume the statements were prejudicial. Such an assumption should be reserved for the rare, blatant case in which defense counsel makes an explicit admission of guilt or uses words that constitute the functional equivalent of such an explicit admission. That sort of admission did not occur in this case. Instead, defendant's counsel merely noted that defendant did wrong, but ultimately urged the jury to find him not guilty of all charges. A successful ineffective assistance of counsel claim based on facts like those at issue here requires proof of prejudice in accordance with the *Strickland* standard. I respectfully dissent.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. In *Strickland v. Washington*,

466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Supreme Court of the United States held that a defendant's right to effective assistance of counsel is violated when the defense counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and when those errors deprived the defendant of a fair trial. The Court left open the possibility, though, that in some cases a defense counsel's error is so egregious that prejudice to the defendant may be presumed. *Id.* at 692, 104 S. Ct. at 2067.

In *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507 (1985), this Court, recognizing a defendant's right to plead not guilty, explained that prejudice to a defendant may be presumed when defense counsel concedes a defendant's guilt to the jury without the defendant's consent. When defense counsel does so, "the harm [to the defendant] is so likely and so apparent that the issue of prejudice need not be addressed." *Id.* In *Harbison*, this Court presumed prejudice to the defendant because defense counsel explicitly recommended that the jury find the defendant guilty of one of the crimes charged. *Id.* at 177–78, 337 S.E.2d at 506.

The central issue in this case is whether defense counsel's statements were so likely to harm defendant that the issue of prejudice need not even be addressed. *Id.* at 180, 337 S.E.2d at 507. According to this Court's precedent, such a result only occurs if defense counsel explicitly, or through the functional equivalent of an explicit statement, admits the defendant's guilt of a charged offense. *State v. Strickland*, 346 N.C. 443, 454, 488 S.E.2d 194, 200 (1997) (holding that *Harbison* did not control

because "[d]efense counsel's statements were not the equivalent of asking the jury to find defendant guilty of any charge").

Defense counsel's statements in this case do not rise to that level of egregiousness. In fact, defense counsel's overall strategy in closing argument appears sound.[1] Defendant faced multiple serious charges, including charges of rape, sexual offense, and assault by strangulation, with indisputable facts that he had in fact injured the victim. Thus, the challenge to defense counsel was to help the jury appreciate its legal duty while at the same time personalize his client. During closing argument, defense counsel noted the following to the jury: "You heard [defendant] admit that things got physical. You heard him admit that he did wrong. God knows he did." Defense counsel also noted that the jury "may dislike [defendant] for injuring Ms. Leonard." Finally, at the end of his argument, he told the jury the following:

> I asked you at the beginning [to] make the State prove their case, make them. Have they? Anything but conjecture and possibility? All I ask is that you put away any feelings you have about the violence that occurred, look at the evidence and think hard. Can you convict this man of rape and sexual offense, assault by strangulation based on what they showed you? You can't. Please find him not guilty.

---

[1] The majority asserts that emphasizing the soundness of defense counsel's strategy misses the point. Certainly it is true that defense counsel may not directly admit a defendant's guilt to the jury without the defendant's consent, no matter how good of a strategy it may be. But in this case defense counsel clearly did not admit defendant's guilt in that manner. The question then is whether counsel's statements were still so egregious that harm to defendant may be presumed without further inquiry. In cases like this one when a *Harbison* violation is not obvious, the *Strickland* analysis applies and the soundness of defense counsel's trial approach matters.

The majority holds that through these statements defense counsel impliedly admitted defendant's guilt to the charge of assault on a female. That decision contradicts both the language in which defense counsel's argument is couched and this Court's repeated application of *Harbison*.

This Court has rejected almost every challenge brought under *Harbison*, because rarely are defense counsel's statements so egregious that harm to the defendant can simply be assumed without any further inquiry. The only instances in which we have held that such a violation occurred have been when defense counsel specifically and explicitly urged the jury to find the defendant guilty of a crime. *See Harbison*, 315 N.C. at 177–78, 337 S.E.2d at 506 (addressing statements made by defense counsel telling the jury that "I don't feel that [the defendant] should be found innocent. I think he should do some time to think about what he has done. I think you should find him guilty of manslaughter and not first[-]degree [murder]"); *State v. Matthews*, 358 N.C. 102, 106, 591 S.E.2d 535, 539 (2004) (addressing a statement made by defense counsel telling the jury that "you ought not to find him not guilty because he is guilty of something").

But in cases in which defense counsel merely admits that the defendant committed a moral wrong, or only concedes the existence of an element of an offense, no *Harbison* violation has occurred. In *State v. Fisher*, 318 N.C. 512, 350 S.E.2d 334 (1986), the defendant was on trial for first-degree murder. Defense counsel admitted to the jury that the defendant acted with malice, an element of second-degree murder.

*Id.* at 533, 350 S.E.2d at 346. Nevertheless, this Court held that there was no per se violation of the right to effective assistance of counsel under *Harbison* because the defense counsel never admitted guilt but instead only admitted an element of a crime while ultimately maintaining the defendant's innocence. *Id.* at 532–33, 350 S.E.2d at 346.

In *State v. Thomas*, 329 N.C. 423, 441, 407 S.E.2d 141, 153 (1991), defense counsel expressed to the jury multiple times that he did not condone the defendant's behavior and even described the defendant's actions as a sexual assault. This Court held that there was no *Harbison* violation because defense counsel did not specifically admit that the defendant committed one of the crimes charged—first-degree murder or first-degree sexual offense. *Id.* at 442, 407 S.E.2d at 153–54.

Finally, in *State v. Greene*, 332 N.C. 565, 573, 422 S.E.2d 730, 734 (1992), the defendant was on trial for first-degree murder after slapping a child and killing him. Defense counsel first conceded that the jury would likely find that the defendant acted with reckless disregard for the victim's life, but he later asserted that the defendant did not actually act in that manner. *Id.* at 570–71, 422 S.E.2d at 733. This Court held that there was no *Harbison* violation because even though defense counsel said that the jury may find reckless disregard by the defendant, defense counsel did not ultimately argue that the jury should do so. *Id.* at 571–72, 422 S.E.2d at 733–34.

In this case defense counsel did not claim that defendant should be found guilty of assault on a female. Nor did his statements functionally constitute a request that

the jury should so find. Defense counsel did state that he thought defendant "did wrong" by engaging in a physical altercation with Leonard. But to say an accused person did something wrong is not the functional equivalent of saying that the person committed one of the crimes charged. And, looking at his statements more comprehensively, defense counsel did not insinuate that defendant committed one of the crimes charged. Shortly before stating that defendant "did wrong," defense counsel explained that the case simply involved "two people in a new relationship that got drunk and got in a fight and an argument, it's as basic as that."

Indeed, defense counsel was pursuing a reasonable and effective strategy of jury persuasion. Defendant was charged with several serious offenses. In such cases it is often in a defendant's best interests for his counsel to concede to the jury that the defendant has behaved poorly. Doing so can enhance defense counsel's credibility and enable counsel to direct the jury's attention not to the question of whether the defendant has done anything morally wrong, but whether the defendant has committed one of the charged crimes. In this case that strategy appears to have been effective: the jury acquitted defendant of all of the most serious charged offenses. So, viewed in context, defense counsel's statements of defendant's wrongdoing and of defendant's injuring Leonard simply conceded the undisputed facts—that defendant's conduct was far from perfect and that defendant was, along with Leonard herself, involved in activity that resulted in Leonard's injuries. Those concessions did not admit defendant's guilt of any of the charges.

*Newby, J., dissenting*

Further, defense counsel did not admit defendant's guilt of assault on a female simply by failing to emphasize defendant's innocence of that crime during the closing argument. At the end of his closing argument, defense counsel specifically expressed that the jury could not return a guilty verdict on the charges of rape, sexual offense, or assault by strangulation. The majority decides that the omission of the assault on a female charge from that list is glaring and obvious and would cause a jury to believe that defense counsel thought the jury should return a guilty verdict on that charge. That analysis is purely speculative and fails to take the statement in context and in accordance with the manner in which it is couched. First, it is reasonable to suspect that an attorney may omit one item from a list of charges simply by accident. And it is quite possible that the jury did not even notice the omission. Second, defense counsel at the end of his closing argument appears to have urged the jury to return a verdict of not guilty, without excepting any of the charges from that request. Naturally understood, defense counsel's statements during closing argument urged not-guilty verdicts across the board. And, in any event, it was not unreasonable for defense counsel to especially emphasize the importance of returning not-guilty verdicts on the most serious offenses charged.

The majority also emphasizes that defense counsel told the jury that defendant had been "honest" to police, in reference to a conversation in which defendant told police about various acts of physical violence he committed against Leonard. First, this statement comports with what appears to have been defense counsel's overall

theory of the case—that defendant and Leonard got in a fight, that defendant committed a moral wrong, but that defendant is innocent of the crimes charged. And, again, this Court has held that even admissions by defense counsel of elements of offenses do not amount to admissions of the defendant's guilt and so are not per se reversible error under *Harbison. See, e.g., Fisher*, 318 N.C. at 532–33, 350 S.E.2d at 346. In fact, one wonders what the majority believes defense counsel should have said about defendant's statements to police. Because this statement by defense counsel was not *Harbison* error, we cannot say that this is the sort of case in which no inquiry into prejudice is required.

Ultimately, of course, the majority holds that it is the *combination* of all of these decisions or mishaps by defense counsel that constituted an assertion to the jury that defendant is guilty of assault on a female. However, all of that together is still not enough to prove a *Harbison* violation. The point of our holding in *Harbison* is that in the rare case a defense counsel's statements are so egregious that harm to the defendant is near certain and it would be a waste of judicial resources to determine whether the defendant was actually prejudiced. *See Harbison*, 315 N.C. at 179, 337 S.E.2d at 507 (quoting *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 2046 (1984)) ("Although this Court still adheres to the application of the *Strickland* test in claims of ineffective assistance of counsel, there exist 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' "). So, the question is not whether

*Newby, J., dissenting*

defense counsel's actions could have led the jury to believe that defendant was guilty of assault on a female; the question is whether defense counsel's statements were so serious, because they were the functional equivalent of a direct and explicit admission of defendant's guilt, that significant harm to defendant is self-evident. Never have we found a *Harbison* error on facts as tenuous as those on which the majority rests its holding today.

Defense attorneys have a limited collection of tools at their disposal when in front of juries. One of these is to admit obvious mistakes made by the defendant. Doing so enhances the defense counsel's credibility, personalizes the defendant, and helps focus the jury's attention on the legal questions it must answer. Before today defense counsel could leverage their experience and discretion to pursue such a strategy as long as they did not admit the defendant's guilt without his consent. Today the majority substantially removes this tool from defense attorneys. Moving forward, defense counsel will hesitate to pursue this reasonable strategy out of fear that their representation will be ruled constitutionally deficient. Here, defense counsel's statements, viewed in their context and their entirety, do not admit defendant's guilt of any of the offenses with which he was charged. The majority wrongly holds that *Harbison* error occurred and thus presumes without further consideration that the fundamental fairness of defendant's trial was impaired. That conclusion is simply inconsistent with this Court's jurisprudence and excuses defendant from making a showing of prejudice in accordance with *Strickland* when

he should be required to do so. The decision of the Court of Appeals should be affirmed.

I respectfully dissent.

Justice ERVIN joins in this dissenting opinion.